**In re Debra M. VOGT, Debtor.**

**No. 94–11416.**

United States Bankruptcy Court,
M.D. Louisiana.

June 9, 2000.

---

Neal G. Johnson, Lafayette, LA, for debtor.

Samera L. Abide, Baton Rouge, LA, for trustee.

### *REASONS FOR JUDGMENT*

LOUIS M. PHILLIPS, Bankruptcy Judge.

Before the Court is the Chapter 7 Trustee's Final Report, which is subject to an objection by the debtor, who has standing because there is sufficient money to allow for a distribution to her pursuant to 11 U.S.C. § 726(a)(6). Resolution of this proceeding requires this Court to interpret 11 U.S.C. § 726(a)(5) to determine whether interest should accrue upon a trustee's claim for compensation and expenses and, if interest should accrue, upon what date should the accrual of interest commence.[1] As well, we have determined it necessary to discuss the specific calculation methodology by which a trustee's maximum compensation amount, set by § 326(a), is established.

Jurisdiction is grounded in 28 U.S.C. § 157(b)(2)(A).

### THE SPECIFICS OF THE ADMINISTRATION OF THIS ESTATE: MONEY, CLAIMS, PRE–FINAL REPORT DISBURSEMENTS, THE TRUSTEE'S FINAL REPORT

Administration of the assets of this Chapter 7 estate, which involved the liquidation of tax refunds and the settlement of a pre-petition personal injury/product liability claim, generated some $89,773.78 (plus accruing interest) for disbursement and distribution. Administration of the claims allowance process resulted in the

---

1. Also, though not directly brought to controversy by the objection, we must determine, should interest accrue, the appropriate rate at which it accrues.

disallowance of numerous claims against the estate (in an aggregate amount greatly in excess of the total allowed claims to be paid through the final distribution). Ultimately, there is a surplus available for payment of interest on all claims paid under § 726(a) and for a distribution to the debtor.

The disbursements from the trustee/estate prior to submission of the "Trustee's Final Report of Administration of Estate, Report of Receipts and Disbursements, Application for Compensation and Reimbursement of Expenses, and Notice of Proposed Distribution" (the Final Report or Trustee's Final Report), amounted to $22.25 for payment towards the trustee's blanket bond premium, and $28,914.81 in payment of the attorney's fees and costs paid to the trustee's attorney for handling the estate's tort claim (these disbursements total $28,937.06). Other than trustee compensation, the claims against the estate that have been allowed and are to be paid through the Final Report distribution, are as follows: (1) priority claims amount to $2,146.38 (this includes the trustee claim for reimbursement of expenses of $119.53 and a state tax claim of $2,026); (2) the unsecured general claims amount to $26,934.83; and (3) the subordinated non-compensatory penalty (tax) claims amount to $589.60. Claims to be paid through the Final Report distribution, excluding the trustee's compensation, total $29,670.81. The compensation requested by the trustee is $6,325.73.

The Final Report proposes to pay interest upon all claims to be paid through the final distribution, with the interest rate fixed at the rate established by 28 U.S.C. § 1961 as of the date of the filing of the petition, and with the interest to accrue from the petition date. The prior disbursements, toward payment of the bond premium and in payment of the estate's attorney's fees and costs for the handling of the tort claim on behalf of the estate, are not to accrue interest according to the Final Report.

The debtor has objected to the portion of the Trustee's Final Report whereby interest is to be accrued from the petition date upon the trustee's compensation claim and is to be paid through the Final Report distribution. There are other vague assertions concerning the trustee's compensation claim, but these are so unfleshed-out that they are not worthy of recapitulation. For reasons set forth below, the Court approves the Final Report as submitted, including the payment of interest upon trustee compensation (and expenses) from the petition date. We recognize and attempt to deal with the fact that our opinion will place us in the unenviable position of having created a one-court-strong minority view, in conflict with a majority view (that trustee compensation claims are not entitled to interest from the petition date), strongly held by courts from all levels (bankruptcy to circuit). As will be shown, we advance an interpretation of the statute (§ 726(a)(5)) that is no different from that reached by the courts with whom we differ. However, we diverge from the other courts who have considered the matter, because of our unwillingness to ignore the statutory directive in favor of a judicially-created better way. We think § 726(a)(5) can be plainly read, can be (even by us) understood, and can (and must) be applied as written, within the context in which it is applicable.

## A PRELIMINARY DISCUSSION; HOW TO ARRIVE AT THE MAXIMUM COMPENSATION AMOUNT IN A SURPLUS CASE

The argument of the debtor is that the surplus is improperly reduced by the interest accrued in the Final Report upon the trustee's compensation and expense reimbursement claims. The trustee has suggested that her compensation claim is less than that allowed under the statutory maximum, but has not provided the alternative calculation of what she thinks her compensation maximum would be, under

§ 326(a).[2] Our first thought was to calculate the statutory maximum compensation under § 326(a) to determine whether the requested compensation, plus the requested interest, would generate a sum less than the statutory maximum compensation amount. The thinking behind this first thought was that maybe we did not have to deal with the interest question, if we could some way establish that the interest component might not affect the surplus if the maximum compensation amount was earned.[3]

Unfortunately (for us), in attempting to arrive at the statutory maximum compensation amount, we have concluded that there are two distinct ways in which the maximum compensation amount can be fixed under § 326(a). We have found much authority which pre-supposes a working knowledge of how to calculate the compensation maximum, but (probably as we would have figured had we thought about it) none which shows this knowledge actually at work.

We have found that until there is more money available than the principal amount of all claims to be paid through the final distribution (other than trustee compensation), the two methods present distinction without a difference, as the maximum

amount of compensation fixed by § 326(a) will be the same regardless of the method used. As we will see, though, when the amount available for distribution becomes greater than the principal amount of the claims to be paid (other than the trustee compensation), the methods yield different results. We point out that the following explanation of the two calculation methods assumes that the trustee compensation claim is entitled to interest accruing from the petition date. Because our analysis of § 726(a)(5) requires this conclusion, we do not offer alternative calculations without interest.

The first calculation method starts with the amount of claims, other than trustee compensation, to be paid through the final distribution. As mentioned, these claims amount to $29,670.81. Interest accrues upon these claims, pursuant to § 726(a)(5), from the petition date, and has been calculated to aggregate $4,693.42.[4] The aggregate claims to be paid through the Final Report, including interest thereon, is $34,364.23. This figure excludes the claim for trustee compensation. To this amount must be added the sum of the pre-Final Report disbursements, given the language of § 326(a). The total of $34,364.23 plus $28,937.06 is $63,301.29.[5]

### 2. § 326. Limitation on compensation of trustee

(a) In a case under chapter 7 or 11, the court may allow reasonable compensation under section 330 of this title of the trustee for the trustee's services, payable after the trustee renders such services, not to exceed 25 percent on the first $5,000 or less, 10 percent on any amount in excess of $5,000 but not in excess of $50,000, 5 percent on any amount in excess of $50,000 but not in excess of $1,000,000, and reasonable compensation not to exceed 3 percent of such moneys in excess of $1,000,000, upon all moneys disbursed or turned over in the case by the trustee to parties in interest, excluding the debtor, but including holders of secured claims.

. . .

This case was filed December 7, 1994, after the effective date of the change to the present statute.

3. The only reason given by the trustee is that she had agreed to ask for less than the maximum amount allowable to augment the surplus. This agreement was made prior to the objection to her Final Report. Given the objection and the vague assertions by the debtor (through her third lawyer) that the trustee did not do her job very well, she likely regrets her decision, but has stood behind it as a deal.

4. One creditor agreed to waive interest.

5. Our statutory analysis set out below requires that only claims paid through the final distribution are claims paid under § 726(a)(1)-(4), and that only claims paid under § 726(a)(1)-(4) are entitled to interest. The tort claim attorney fees and the bond premium disbursements, therefore, are not entitled to interest. This issue is not raised by the facts, as neither the trustee (on account of the bond premium disbursements) nor the tort claim lawyer (on account of fees and

The trustee's maximum compensation amount, under this approach, is calculated according to § 326(a) as follows:

| | | |
|---|---|---|
| $ 63,301.29 | | compensation maximum |
| − 5,000.00 | = | $1,250 |
| $ 58,301.29 | | |
| − 45,000.00 | = | $4,500 |
| $ 13,301.29 | | |
| × .05 | = | $665.06 |
| Total maximum compensation to which trustee is entitled | = | $6,415.06 |

As mentioned, the trustee in this case is requesting $6,325.73 in compensation.

From this determination of the maximum compensation amount, we see that there is a difference of only $89.33 between the maximum and the amount requested. The interest that has been accrued from the petition date has been accrued upon $6,325.73, the claimed compensation, and amounts to $1,925.66. (Interest that would accrue upon the maximum amount would be $1,955.05). The requested compensation plus interest is $8,251.39. The maximum compensation amount plus interest would be, under this calculation method, $8,370.11.

We can now determine the surplus that is available in this case and that would be available if the maximum compensation, as herein calculated would be approved. To get the actual surplus, the $63,301.29 is added to the requested trustee compensation, plus interest thereupon (the sum of $8,251.39). The total, $71,552.68, is subtracted from the total receipts (plus interest) to arrive at the surplus to be returned to the debtor. In this case, the surplus to be paid to the debtor will be in excess of $18,221.10. Had maximum compensation been requested and approved, the surplus would have been reduced by the $89.33 difference between the maximum compensation and the requested compensation, plus accrued interest thereupon (approximately $27.22), or $116.55. This would yield a surplus of $18,104.55. This calculation method interprets the language of

costs paid pursuant to prior court order) have

§ 326(a), "monies disbursed or turned over in the case by the trustee to parties in interest, excluding the debtor, but including holders of secured claims" to exclude the trustee from the term "parties in interest." In other words, this calculation method carves out from the "monies disbursed or turned over" that are to be used in calculation of the statutory cap, the monies disbursed or turned over by the trustee as trustee to the trustee as claimant.

There is another calculation method, one which includes monies disbursed or turned over by the trustee to all parties in interest, including the trustee, excluding only the debtor, as the amount upon which the percentages are determined. As mentioned (and as will be shown), there is no difference in outcome unless there is enough money to pay more than the principal amount of all claims other than trustee compensation. In other words, there is no difference in outcome in probably 98% of the asset cases administered nationwide, regardless of the calculation method used. However, once the principal balance line is crossed, the difference is manifest.

This second method begins with the total receipts. The trustee's maximum compensation is calculated as though the entirety of the receipts are to be disbursed to creditors and parties in interest, other than the debtor, and thereafter is reduced to the extent necessary to account for the surplus to be distributed to the debtor.

asserted a request for interest.

The debtor's surplus is arrived at through the back door, so to speak.

Applying this method to the facts of this case, yields the following:

| Total receipts: | | compensation maximum |
|---|---|---|
| $ 89,773.78 | | |
| − 5,000.00 | = | $1,250 |
| $ 84,773.78 | | |
| − 45,000.00 | = | $4,500 |
| $ 39,773.78 | | |
| × .05 | = | $1,988.69 |
| Beginning Maximum Compensation Amount | | $7,738.69 |

Step two requires the calculation of claims entitled to interest, which are determined by deduction of the pre-Final Report disbursements from the entire range of claims. We subtract from the $89,773.78 the prior distributions of $28,937.06 to get $60,836.72 available receipts (for the payment of claims—including compensation—interest on claims, and the surplus). Interest is then paid on all claims, including the beginning maximum compensation amount. The interest number, ($4,693.42 + 2,358.44 = $7,051.86) plus all claims ($29,670.81 + 7,738.69 = $37,409.50) would amount to $44,461.36. This number is then subtracted from $60,836.72 to get the initial surplus calculation of $16,375.36. Step three requires the calculation of the amount of the beginning maximum compensation amount that is attributable to the surplus. This figure is arrived at by multiplying $16,375.36 times .05. The result is $818.77. The interest that had been accrued upon this amount is then figured (in this case the aggregate interest accrual upon the claims was 30.476%, that is, the interest calculated divided by the principal claim amount). The interest accrued upon the portion of trustee compensation attributable to the debtor's surplus is $818.77 × .30476 = $249.53. This amount is added to the $818.77, and the sum, $1,068.30, is added to the debtor's surplus and subtracted from the beginning maximum compensation amount and interest amount due on the

beginning maximum compensation amount. Using this method of calculation of the maximum trustee compensation amount and interest thereupon, the surplus amount would be $17,443.66, as opposed to the approximate surplus in this case of $18,221.10 (a difference of $777.44), and as opposed to the approximate surplus of $18,104.55 that would be generated using the statutory maximum compensation as calculated under the prior method (a difference of approximately $660.89). Using this method of calculation, the trustee compensation maximum is $6,919.92 (as opposed to $6,415.06). The maximum compensation amount plus interest ($2,108.91) would be $9,028.83, as opposed to $8,370.11 (a difference of $658.72).[6]

The difference in maximum compensation generated by the calculation methods is approximately $660 more trustee compensation plus interest thereupon, resulting in a reduction of the surplus in a like amount. The vast majority of asset cases, at least in this court, do not generate sufficient funds to pay the principal balance of the non-compensation claims, much less a surplus to the debtor. In these less than 100 percent of the principal claim cases, the amount of receipts will not differ from the amount available to disburse or turnover to non-trustee parties in interest. The question raised by the aforementioned calculation method examples is whether, if

6. This $658.72 should equal the difference between the two surplus calculations. We attribute the discrepancy to rounding off.

there are sufficient monies to pay 100% of the principal balance of the non-compensation claims, the method of calculation should be constructed out of a claims base, or, as in the second example, out of a receipts base. In light of the foregoing analysis, though, we have another question. Do we have to decide this question here?

As shown, the compensation requested by the trustee, here, is less than the maximum allowable under either of the two calculation methods. Because the requested compensation plus interest (accrued from the petition date) totals more than the maximum compensation amount under either of the methods, we cannot avoid dealing with and deciding the interest question. However, because the compensation claim is less than the lowest calculated maximum compensation amount, it is not necessary to this opinion that we choose a calculation method as the one to be employed in asset cases. We do, though, oversee a goodly number of asset cases (approximately 24.5% of Chapter 7 cases closed annually are closed as asset cases in this court). Therefore, though not utterly necessary to the outcome of this proceeding, the Court offers the following observations upon the preferable calculation method by which the maximum compensation amount should be determined.

Section 326(a) is a method of fixing the maximum compensation to which a Chapter 7 trustee is entitled.[7] It does not provide grounds for or a method of allowance of compensation.[8] Compensation is determined, and allowed, pursuant to § 330(a).[9] Therefore, notwithstanding the

---

7. We do not mean to limit our suggestion to Chapter 7 trustees; we are dealing with a Chapter 7 trustee here.

8. *See Matter of England,* 153 F.3d 232 (5th Cir.1998).

9. Section 330(a) reads as follows:

**§ 330. Compensation of officers**

(a)(1) After notice to the parties in interest and the United States Trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to a trustee, an examiner, a professional person employed under section 327 or 1103—

(A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, professional person, or attorney and by any paraprofessional person employed by any such person; and

(B) reimbursement for actual, necessary expenses.

(2) The court may, on its own motion or on the motion of the United States Trustee, the United States Trustee for the District or Region, the trustee for the estate, or any other party in interest, award compensation that is less than the amount of compensation that is requested.

(3)(A) In determining the amount of reasonable compensation to be awarded, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including—

(A) the time spent on such services;

(B) the rates charged for such services;

(C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and

(E) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

(4)(A) Except as provided in subparagraph (B), the court shall not allow compensation for—

(i) unnecessary duplication of services; or

(ii) services that were not—

(I) reasonably likely to benefit the debtor's estate; or

(II) necessary to the administration of the case.

(B) In a chapter 12 or chapter 13 case in which the debtor is an individual, the court may allow reasonable compensation to the debtor's attorney for representing the interests of the debtor in connection with the bankruptcy case based on a consideration of the benefit and necessity of such services to the debtor and the other factors set forth in this section.

(5) The court shall reduce the amount of compensation awarded under this section by the amount of any interim compensation awarded under section 331, and, if the amount of such interim compensation exceeds the amount of compensation awarded

continued use of the term "commission" in cases dealing with compensation,[10] fixing the compensation cap is not the same as fixing a commission to be paid. It is simply a mechanism for capping compensation, regardless of what level of compensation might otherwise be reasonable.

The maximum compensation amount is established through reference to a group of percentages applied to an amount of money. The amount of money is described as "all moneys disbursed or turned over in the case by the trustee to parties in interest, excluding the debtor, but including holders of secured claims." (§ 326(a)).

■ Whether the moneys disbursed or turned over by the trustee to the trustee as a party in interest are to be included for purposes of calculation of the maximum compensation amount is the question. Of course, we look first to the statute.[11]

Clearly, disbursements or moneys turned over by the trustee to the debtor are excluded. In fact, the debtor is the only party in interest excluded from those parties in interest whose disbursements or turnovers of money will from the calculation base. Just as clearly, the trustee is a party in interest. However, at first blush, the suggestion that "the trustee" could be different from the trustee as a party in interest so as to provide a transaction by which there could be a disbursement, and receipt of the disbursement, is improbable.

But hold it. Is it analytically implausible? We think not.

As we shall see, numerous courts dealing with our interest question have in the course of their analysis (wherein they determine that trustees are not entitled to interest from the petition date), pointed out that the trustee does not have a right to demand and receive payment of compensation unless and until there is an order approving the compensation.[12] The Bankruptcy Code is replete with references to the trustee being a claimant.[13] As trustee/administrator of the estate, the trustee is the representative of the estate, who is to account for all moneys through separate case accounts. As trustee claimant, the trustee wants court authority to take money from the case account and pay it to the trustee, individually, so that the funds can be deposited into the trustee's personal account for personal use. The distribution, then, of money upon a trustee compensation claim is in fact a two party transaction. The trustee (as fiduciary) to the trustee (as claimant); the disbursement is from the bankruptcy estate to the trustee's personal estate or patrimony.

The statute is clear. All monies, excepting those disbursed or turned over to the debtor, are monies turned over to parties in interest. All parties in interest, excepting only the debtor, are parties in interest who receive monies disbursed or turned over. The purpose of the statute is clear from the clear language. The trustee

under this section, may order the return of the excess to the estate.
 (6) Any compensation awarded for the preparation of a fee application shall be based on the level and skill reasonably required to prepare the application.
*See Matter of England, supra.*

10. *See,* for example, *In re Motley,* 150 B.R. 16 (Bankr.E.D.Va.1992).

11. *See, Connecticut National Bank v. Germain,* 503 U.S. 249, 254, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992); *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989). Very recently, the Supreme Court has reaffirmed as the fun-

damental tenet of statutory construction, "that Congress says in a statute what it means and means in a statute what it says there." *See, Hartford Underwriters Insurance Company v. Union Planters Bank, N.A.,* — U.S. —, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000) (internal quotations omitted).

12. We do not think that these observations are relevant to the interest question, but point out because we have no doubt that the no interest courts we will discuss would assume an analytical posture different from ours on this score as well.

13. *See* § 503(b)(2); § 507(a)(1); § 726(a)(1); § 331.

should make a fee limited by the compensation maximum established by § 326(a), regardless of the fee that might otherwise be allowable under § 330. The trustee maximum compensation should bear relationship to the estate administered. The trustee maximum compensation should not bear relationship to the monies disbursed or turned over to the debtor, because of the primary duty of the trustee—to administer the estate for the benefit of creditors, in conformity with the rights of all parties in interest. If there is a surplus for the debtor, it exists because of the administration of the bankruptcy estate on behalf of those to whom the trustee owes the primary administrative duty. The debtor should not pay compensation to the trustee who was not working for the debtor, merely because the trustee's work, now done, has yielded fruit that will fall all the way to the bottom of the stack of buckets of ever-increasing size (top to bottom). The administration which yielded the surplus should, in determining the extent of the surplus, reflect the entirety of the administrative cost. Calculation of the compensation maximum should account for the entirety of the administrative costs. This is why, from the language of the statute, we glean Congressional intent to recognize the administrative costs inherent in the distribution and turnover of monies to secured creditors, and to recognize that if the administration (and disbursement or turnover to monies to **all** parties in interest) has created a surplus, to deem the administrative costs accounted for.

There is nothing in the language of § 326(a) that indicates to us that a mode of calculation of the maximum compensation other than the receipts based (second) method should be used. The inclusive "all monies . . . to. parties in interest" followed by the single exclusion of the "the debtor" followed with the phrase "but including holders of secured claims," leaves no room for exclusion of distributions to the trustee. In fact, the language militates against excluding anyone other than the debtor. The trustee is not the debtor.[14]

We have mentioned that the receipts bases calculation method can generate a reduced return to non-trustee creditors, if the monies available are not sufficient to pay principal and interest upon all such claims plus the trustee compensation claim and interest thereupon.[15] The showing of this effect, alongside the calculation of the maximum compensation amount using the claims based calculation method reveals the extent of the diminution, **and at the same** time, generates an argument in favor of the receipts based calculation method because of the difficulty in proceeding through the one that is claims based.

For example, suppose the receipts total $7,000 and allowed non-trustee compensation claims amount to $5,000. How is the maximum compensation amount to be fixed if not by our analysis (which would

---

**14.** Including the trustee, as will be shown, can generate a diminution in the amount to be paid to creditors, if there is less than enough to pay all non-trustee claims 100% plus all interest (then the inclusion reduces the surplus). This cannot be a ground for reading the statute other than we do. Clearly, calculating maximum compensation upon distributions to secured creditors can cause diminution in payments to unsecured creditors (we know courts have historically been creative in reducing this effect, but § 326 says what it says). If maximum compensation calculated upon monies including those disbursed to secured creditors is awarded, it must be paid out of the pockets of the unsecured claims, for by definition, the monies paid to secured creditors cannot be paid to unsecured creditors. In other words, by including distributions to secured creditors, Congress has legislated a significant statutory basis upon which distributions to unsecured creditors can be significantly decreased. It is therefore no argument to suggest that diminution of the amount payable to unsecured creditors is a valid ground for excluding the disbursements on moneys to be turned over to the trustee from those upon which the maximum compensation amount is calculated.

**15.** We have shown how the method reduced the surplus to the debtor if there is sufficient money to generate a surplus.

fix the compensation maximum at $1,450, would accrue interest upon each claim (including compensation) until all money is gone, and would generate a maximum compensation amount of $1,450 + 123.64 in interest for a total of $1,573.64).

If the maximum compensation amount is figured on the claims, the beginning maximum compensation amount is $1,250 determined by the $5,000 in claims, which leaves $750 available for payment of interest ($5,000 + 1,250 = $6,250, which leaves $750 of the original $7,000). Should the maximum figure be calculated upon the $750, which would include compensation calculated upon trustee interest? Should the $750 be divided, as interest, between the trustee and the other creditors and thereafter taken away from the creditors by the compensation percentage deduction? (That is, $1,250 is 20% of $6,250, so 20% of the $650—$130—would be treated as interest on trustee compensation with $520 available for interest on the other claims.) The maximum compensation amount may be calculated, certainly, upon the interest paid to the other creditors, which requires that the compensation cap be increased by 10% of $520 or $52.00. The maximum compensation amount now is $1,250 + 52 = $1,302. The funds available for interest now total $598 ($650—52 = $598). The maximum compensation amount is now 20.66% of the claims (1302/6302 = .2066). Of the $598 now available for interest, the trustee compensation claim is entitled to $123.54, with the creditors entitled to the remaining $474.46. The trustee maximum compensation amount then is $1,302 plus interest of $123.54, resulting in a maximum compensation plus interest of $1,425.54. The

claims based method results in an additional compensation cap of $178 and no perceptible additional interest. The difference in the two totals ($1,573.64—1,425.54) is $148.10.

We think the ease of calculation argues in favor of the receipts-based calculation method. The claims-based method requires the following additional steps before interest can be calculated on claims.

(i) Calculation of the relation of trustee claims to the total claims;

(ii) Multiplying this percentage times the money available for interest on all claims;

(iii) Backing out the additional moneys to be added to the maximum compensation amount from the amount previously available for interest; and

(iv) Recalculating the relationship of the maximum trustee compensation claim to determine the new relationship to the overall claims for the purpose of recalculating the amount of interest to be paid on all claims from the reduced interest pot.

There is a slight increase is the maximum compensation amount, but as we see, a barely perceptible increase in the interest attributable (there will be less interest to go around on a proportionately bigger claim amount). We recognize that ease of calculation should be seen, if not as even icing then as candles on the icing of an argumentative cake. But it is something, and formalization of calculation methodology would facilitate uniform calculation of the maximum compensation amount (and therefore uniform application of a federal statute).[16]

---

**16.** We do not profess to be software literate, but understand that trustee Final Reports are software produced. We think it probable that the national programs probably use a receipts-base calculation (monies disbursed or turned over). Use of a claims-based calculation once funds passed the amount of the principal balance of all claims entitled to be paid, including the trustee claim, would require a second program or a manual override.

Also, it would require a repositioning of the calculation of the maximum compensation amount. We cannot be certain, but this necessity, we think, would generate a broomstick in the spokes of progress toward uniform calculation methodology and would foster parochial, localized treatment of statutory formula (doubtless intended to be applied uniformly).

Second, because the sliding scale does not represent a method of fixing a commission, but only a maximum compensation amount, the calculation does not fix compensation to which the trustee is entitled, but only determines the maximum amount allowable under § 330(a), after analysis by the court of the considerations set forth therein. The importance of this consideration should not be overlooked. All that any court is doing by using the formula provided in § 326(a) is coming up with a number. This number must be tested against the requirements of § 330(a). Section 330(a) provides authority to reduce compensation if the maximum amount is unreasonable when compared to the particularities of the administration process. Section 326(a) provides a limit upon compensation should a trustee be able to establish that § 330(a), standing alone, would allow greater compensation. Our mention of the relative ease of calculation, then, takes on (we think) added significance in this light. We are only coming up with a number, a ceiling number. Not a guide. Not a presumption of reasonableness. Not a commission. Not compensation to be awarded. The statute can be plainly read to provide for the receipts-based method of calculation, and we think it is the easiest approach. We cannot think of a reason to fight a plain reading of a statute that actually results in ease of calculation. So much of this business is just plain hard.

We are mindful of the possible arguments against this approach, but think we have answered them. The first is that our calculation method would allow the trustee compensation upon trustee compensation and compensation upon amounts that ultimately are to be paid as interest. In response, we point out that our method admits of easy calculation of both the statutory maximum and the surplus that is to be returned to the debtor. It does not affect the calculation of maximum compensation unless there is more money to be disbursed than one hundred percent of the principal amount of all claims plus maxi-

mum compensation calculated upon the § 326 percentages of these amounts. Finally, because the calculation of the statutory maximum is merely the fixing of a maximum amount of compensation allowable and is not the calculation of compensation to which the trustee is entitled, it does not allow any compensation to a trustee. Talk of allowing a trustee to earn compensation on compensation, or compensation on interest, or whatever, is simply misplaced. The trustee earns compensation by administering an estate in such a way that § 330(a) would provide grounds for a court to award compensation. Section 326(a) deals not with earning money, but fixing a number, past which a trustee, even if it could be said that she earned the money, cannot be paid.

## THE TRUSTEE'S COMPENSATION AND EXPENSE REIMBURSEMENT REQUESTS

■ As mentioned, the trustee has requested compensation in the amount of $6,375.73, which is below the maximum compensation allowable under § 326(a). The trustee has also requested expense reimbursement amounting to $119.53. Before moving to our discussion of interest, we should deal with the question whether this trustee is entitled to the compensation and expense reimbursement requested.

The trustee has submitted a time-sheet reflecting the expenditure of 51.5 hours in the administration of this estate, though the time-sheet represents insufficient time dealing with the final steps of this case. The trustee successfully pursued a number of objections to claims, which in fact generated the surplus (and thereby making the interest question relevant). She had to prepare the final report twice, because after the first report, the debtor brought forth information which allowed for an amended state tax claim. The trustee's time was easily worth the $123.80 per hour that division of the compensation requested by the time spent yields. The results

of the bankruptcy administration have generated the payment of all allowed claims, plus interest, and a surplus distribution to the (most ungrateful) debtor. The compensation is approved under § 330. The expense reimbursement request is likewise approved; it is reasonable, seeks reimbursement of actual expense (copies, postage, etc.).

We now move on.

## INTRODUCTION TO DISCUSSION

We must deal with numerous statutory provisions, but the statutory beginning point is § 726(a), the Code section that sets forth the general Chapter 7 distribution provisions, and, particularly, § 726(a)(5), the subsection requiring payment of interest.[17]

First, the Court notes that the Final Report was reviewed by the United States Trustee, and, in form and content (we think), comports with the required guidelines and/or directives of the United States Trustee, regarding the calculation of trustee compensation, interest payable on claims, and the remaining surplus to the debtor. However, we do not abdicate our

responsibility to resolve the objection before us to the United States Trustee. The objection is to be resolved by the court.

The jurisprudence dealing with § 726(a)(5) advises that though the statute might look easy to understand, application of it as written would loosen the bands that prevent the escape of hordes of demons. We are taught that we are to resist a sapheaded predisposition to apply statutes as written and are to focus upon fashioning a better way, judicially created. Admittedly, the jurisprudence dealing with § 726(a)(5) points out some problematic consequences that might befall a plain meaning reading and plainly read application of § 726(a)(5). These cautions have knocked us back and caused us to bemoan our too-easily-come-by, self-satisfied sense that we could understand a Code provision without much effort.

So, we have been done a favor. We have been forced to remember that understanding statutes is hard stuff, and have been reminded of just how hard it has always been to us.

17. **§ 726. Distribution of property of the estate**

(a) Except as provided in section 510 of this title, property of the estate shall be distributed—
(1) first, in payment of claims of the kind specified in, and in the order specified in, section 507 of this title, proof of which is timely filed under section 501 of this title or tardily filed before the date on which the trustee commences distribution under this section;
(2) second, in payment of any allowed unsecured claim, other than a claim of a kind specified in paragraph (1), (3), or (4) of this subsection, proof of which is—
(A) timely filed under section 501(a) of this title;
(B) timely filed under section 501(b) or 501(c) of this title; or
(C) tardily filed under section 501(a) of this title, if—
(i) the creditor that holds such claim did not have notice or actual knowledge of the case in time for timely filing of a proof of

such claim under section 501(a) of this title; and
(ii) proof of such claim is filed in time to permit payment of such claim;
(3) third, in payment of any allowed unsecured claim proof of which is tardily filed under section 501(a) of this title, other than a claim of the kind specified in paragraph (2)(C) of this subsection;
(4) fourth, in payment of any allowed claim, whether secured or unsecured, for any fine, penalty, or forfeiture, or for multiple, exemplary, or punitive damages, arising before the earlier of the order for relief or the appointment of a trustee, to the extent that such fine, penalty, forfeiture, or damages are not compensation for actual pecuniary loss suffered by the holder of such claim;
**(5) fifth, in payment of interest at the legal rate from the date of the filing of the petition, on any claim paid under paragraph (1), (2), (3), or (4) of this subsection;** and
(6) sixth, to the debtor.
. . .

We have, for a long while, thought we understood what § 726(a)(5) says, and therefore thought we understood what it means. However, having serious doubts about one's ability to make sense out of even the simplest of passages can, if these doubts are recalled, bear fruit. Because of the presumption we impose upon ourselves, that it will take us a measurably longer period of time to understand the plain meaning of the plainest of statutes, we are almost unwilling to declare a statute ambiguous, "demonstrably at odds with the intent of its drafters," or, "arbitrary, absurd, capricious or illogical ...," etc. We are even more afraid of the harm that may be caused by abandoning our task of interpretation (in favor of legislating substitute statutes more to our liking), than we are of botching our analysis.

As mentioned, the caselaw interpreting § 726(a)(5) is certain of its meaning and equally assured of the ridiculousness of applying it as written and of the need of it for being reworked, judicially. We, on the other hand, have determined that we understand the statute, understand how it works, and understand the context within which it is operative. Our understandings do not lay rest to all of the concerns of the other courts who have dealt with the statute (though we think we have laid many to rest), but they do lead us to the conclusion that, though there could be consequences that conflict with other ways that could

"better" (depending upon one's personal predilections), none of these "problematic" or "unforeseen" consequences conflicts with the authority of Congress to have the statutes, as promulgated, applied as written.

## A PRELIMINARY MATTER: IF INTEREST IS TO ACCRUE, AT WHAT RATE WILL IT DO SO?

■ Though not particularly called into question by the objection, we must first address the rate of interest provided by § 726(a)(5).[18]

The trustee has used the interest rate established by 28 U.S.C. § 1961(a), as of the date on which the bankruptcy petition was filed.[19] As we know, the statute **requires** that interest accrue "at the **legal rate** from the date of the filing of the petition." The question is, then, what does the term "legal rate" mean? There are numerous published opinions dealing with this question. We adopt the conclusion, and, as well, most of the reasoning and research of the bankruptcy court in *In re Dow Corning Corporation*,[20] as our own. In *Dow Corning*, Judge Spector has done for us what we were afraid we would have to do—an analysis of the statutory language, definitions of words, caselaw and arguments applicable, power of Congress, doctrinal authority, etc. He says, and we agree, that the term "legal rate" as used in

---

**18.** The objection which asserts that there should be no interest until after an order approving final trustee compensation, does not dispute the rate of interest used by the trustee. The trustee here uses the federal rate. We can foresee, though, an objection relating to the interest rate used, if, for example, the federal rate should exceed the applicable state law or contract rate, etc. This court has repeatedly ruled (in unpublished rulings) that the federal rate is applicable. Because the rate used could affect the extent of surplus, we deal with the question here.

**19.** 28 U.S.C. § 1961(a) reads as follows:

> **§ 1961. Interest**
> (a) Interest shall be allowed on any money judgment in a civil case recovered in a

district court. Execution therefor may be levied by the marshal, in any case where, by the law of the State in which such court is held, execution may be levied for interest on judgments recovered in the courts of the State. Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the coupon interest issue yield equivalent (as determined by the Secretary of the Treasury) of the average accepted auction price for the last auction of fifty-two week United States Treasury bills settle immediately prior to the date of the judgment. The Director of the Administrative Office of the United States Courts shall distribute notice of that rate and any changes in it to all Federal judges.

**20.** 237 B.R. 380 (Bankr.E.D.Mich.1999).

§ 726(a)(5), is the rate as established by 28 U.S.C. § 1961, that would be applicable to money judgments of the federal courts as of the date of the filing of the bankruptcy petition.

We agree with the portion of the analysis that equates the pre-petition allowed unsecured claim as entry of a money judgment as of the petition date.[21] We agree with the analysis of the state law rate and federal law rate cases, and the shortcomings of both.[22] We agree with the research by which the court concludes that "legal rate" is and was commonly understood to mean "at a rate fixed by a statute" and with the observations concerning the propriety of using the 28 U.S.C. § 1961 rate instead of multitudinous non-federal rates within a single bankruptcy case.[23]

It is possible that the court in *Dow Corning* faces something of a problem with the assertion by creditors in the *Dow Corning* case that a plan proposed by a solvent Chapter 11 corporate debtor, if it could be shown that liquidation of the corporate debtor under Chapter 7 would yield a surplus over and above the claims plus interest at the federal rate, would not pass the "best interest of creditors" test. In *Dow Corning*, the court refers to the similarities between § 1325(a)(4)[24] and

§ 1129(a)(7).[25] However, § 1325(a)(4) relates to individual bankruptcy cases, and, presumably it would seem, the existence of a Chapter 7 discharge underlying the "best interest of creditors" analysis. The response of the *Dow Corning* court to the argument that the "best interest of creditors" test of § 1129(a)(7) must account for the retention of rights in a Chapter 7 case (because of the absence of discharge), is unclear to us. We quote the most problematic passage:

... The argument is based on the assumption that an otherwise non-dischargeable, unsecured claim could pass through bankruptcy without being liquidated or estimated and that, as a result, the holder of the claim would be excluded from sharing in the pro rata distribution of a debtor's assets. Section 726(a) demonstrates that this assumption is incorrect. And in fact, when estate proceeds are sufficient, the Bankruptcy Code requires all claims to be paid in full with interest, thereby leaving nothing upon which to sue. In other words, the most that an unsecured creditor is entitled to receive in a chapter 7 proceeding is the value of its claim as of the petition date plus post-petition "interest at the legal rate." Once an unsecured claim is paid in accordance with the

21. *In re Dow Corning Corporation*, 237 B.R. at 392 *et seq.*

22. *Id.* at 393–400.

23. *Id.* at 400–411.

24. 11 U.S.C. § 1325(a)(4) reads as follows:
 (a) Except as provided in subsection (b), the court shall confirm a plan if—
 . . .
 (4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date;

25. 11 U.S.C. § 1129(a)(7) reads as follows:
 (a) The court shall confirm a plan only if all of the following requirements are met:
 . . .

(7) With respect to each impaired class of claims or interests—
 (A) each holder of a claim or interest of such class—
 (i) has accepted the plan; or
 (ii) will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title on such date; or
 (B) if section 1111(b)(2) of this title applies to the claims of such class, each holder of a claim of such class will receive or retain under the plan on account of such claim property of a value, as of the effective date of the plan, that is not less than the value of such holder's interest in the estate's interest in the property that secures such claims.

above formula, it is satisfied and the claimant will have no further recourse against the debtor. Were this not the case, Congress would not have expressly provided for estate proceeds remaining after such distribution to be returned to the debtor. See 11 U.S.C. § 726(a)(6)....

We do not agree. We do not think the purpose of § 726(a)(1)-(5) is to effect a satisfaction of claim under either federal law or state law. Section 726(a)(5) provides a pre-emptive interest overlay, upon all claims paid through the final distribution, before funds are to be returned to the debtor. This interest overlay does not satisfy the state law claim, and if there is a discharge, it is the discharge that precludes further collection efforts against the debtor, personally (it does not preclude collection efforts from other sources—*see* § 524(e)). If there is no discharge (a corporate case, for example), the effect of § 726(a)(1)-(5), in combination with § 726(a)(6), is to limit the distributions that creditors are entitled to from the trustee of the estate, as trustee of the estate. The interplay of § 726(a)(1)-(5) and (a)(6) do not generate the satisfaction of all rights to payment if there be no discharge. Because of this, we think the *Dow Corning* court gave the argument too short a shrift, and probably should have focused its discussion upon the difference inherent in the Chapter 11 process, that is, the corporate discharge. The corporate discharge would seemingly require that the court be unable to compare the Chapter 7 no-discharge situation with the Chapter 11 discharge situation, for to do so would obviate the Chapter 11 discharge. Of course, the creditors would argue that it should be obviated in the situation of the obviously solvent estate.

We leave this discussion at this point, for we are dealing with an individual debtor in a Chapter 7 case who has obtained a discharge. We needed, however, to point out the above difference because it appears that our understanding of § 726(a)(1)-(6)

as the final distribution provision, and our understanding of the actual pre-emptive effect of § 726(a)(5), causes an analytical difference to emerge. We do not see the final distribution provisions of § 726(a) as establishing the bankruptcy method by which claims are satisfied for all purposes. We think that the particular question posed to the *Dow Corning* court, then, remains alive, but does not affect the analysis of the meaning of "legal rate" for purposes of the final distribution provisions of § 726(a).

The caselaw cited within *Dow Corning* is exhaustive, and we appreciate it. The *Dow Corning* court makes a convincing case for the proposition that the term "the legal rate," as used in § 726(a)(5), refers to the federal judgment rate as established by 28 U.S.C. § 1961. The phrase, "from the petition date," gives us, among other things, the particular rate to apply (the rate established by the statute as of the date of the filing of the bankruptcy petition).

In conclusion, interest under § 726(a)(5) will be at the rate established by 28 U.S.C. § 1961 as of the date of the filing of the petition. It is inconceivable that Congress meant anything else, that in referring to "the legal rate," Congress was constructing a statutory system in which the very last step (or next to last if the last one is the actual distribution to the debtor) would be harder to complete than all prior administrative steps put together. In this case, the trustee used the correct rate of interest.

### WITH THE QUESTION OF RATE OUT OF THE WAY, THE STATUTE

We now move to figuring out the entirety of § 726(a)(5). To reiterate, § 726(a)(5) provides:

(a) fifth, in payment of interest at the legal rate from the date of the filing of the petition, on any claim paid under paragraph (1), (2), (3), or (4) of this subsection;

We have mentioned (and will show) that the cases interpreting § 726(a)(5), within the context of the question of whether interest accrues upon trustee (and other professionals') compensation claims basically agree with us as to what the statute says.[26] Our reading, upon a dissection of the phraseology, is:

1. After payment of all claims through and under § 726(a)(1)-(4),

2. Interest, fixed at the rate established under 28 U.S.C. § 1961 for money judgments of the federal courts entered on the date of the filing of the bankruptcy petition, and

3. Accruing from the date of the filing of the petition,

4. Is to be paid on all claims that are (to be) paid through and under § 726(a)(1)-(4).

Section 726(a)(5) is applicable only after the payment of claims paid (or to be paid) under subsection 726(a)(1)-(4). Section 726(a)(5) provides the rate of interest. Section 726(a)(5) provides the date on which interest accrual begins ("payment of interest . . . from the date of the filing of the petition"). Section 726(a)(5) requires that all claims paid under § 726(a)(1), (a)(2), (a)(3), and (a)(4) receive interest (at the legal rate) from the date of the filing of the petition. The only pre-condition to qualification as a claim entitled to be paid interest from the petition date, then, is that the claim be one paid under § 726(a)(1), (2), (3), or (4). If a claim is such a claim, it is entitled to interest from the petition date.

This, to us, appears simple, and is a reading that cannot be questioned, it is so plain. Plainness of meaning, however, is not synonymous with freedom from problems in application of a statute. Studying the jurisprudence reveals at least superficial difficulties (though we will own up to having been, at first, second, and even third blush, thrown by them). This juris-prudence questions whether the statute, though it can be read as easily as we read it, should be applied as written, and suggests that applying it as written produces absurdity, illogical results, an arbitrary and capricious scheme, results demonstrably at odds with the intention of Congress, etc.

Why? These cases, dealing with professional fees under § 330(a), both trustee compensation and other professional fees, elucidate a problem/concern. How can a statute require the payment of interest from the petition date on a post-petition administrative claim such as a trustee's attorney's fees, though the attorney may not have been hired until (for example) two years after the petition (any number of years or months will do)? Second, how can the statute require payment of interest upon a trustee's compensation when the trustee is not entitled to be paid compensation (at least maximum, final compensation) until the very end of the case (and only after court order approving the compensation)?

These are good questions. However, they are not the only questions. While contemplating the concerns of the other courts, we got stuck on even more problematic questions. Such as:

1. Can it be possible that § 726(a)(5) requires payment of interest upon all claims paid as administrative expenses (because these are claims paid under § 507(a)(1))? If so, wouldn't § 726(a)(5) require payment of interest, from the petition date, upon all claims that had, prior to the final report, been paid in the ordinary course of business? These claims would have been incurred after the petition date and paid before the final report date, and would not be looking for interest at the time of final settling up (having been paid according to ordinary business terms without much affiliation with the bankruptcy

---

**26.** There is one aberrational opinion, *In re Motley,* 150 B.R. 16 (Bankr.E.D.Va.1992), that we will get to, which offers the possibility of a different reading of the subsection, one which the court, once it comes up with it, uses its "equitable power" to reject.

process other than being dealt with in the estate through a trustee). Though it must be seen, by the language of § 326(a), that trustee compensation can be calculated upon disbursements to parties with whom the trustee conducted business post bankruptcy—employees, insurers, suppliers of product and inventory, sellers of insurance, taxing authorities, etc.—the prospect of paying interest upon these types of claims, which were incurred and paid in the ordinary course of business, for a period before (and perhaps even after) there was a relationship between the creditor and the trustee would seemingly defy logic and practical implementation.

2. Can it be possible that § 726(a)(5) requires the payment of interest upon all claims of professionals, including lawyers, retained post petition by the trustee, whose fees would already have been paid (or partially paid), and who probably faced some ethical prohibition upon accepting interest upon fees for a time before which there was an attorney-client relationship, and by definition, therefore, a claim for fees, and for the post-relationship period as well?

To a degree, these concerns have been wrestled with by other courts. These concerns, including the last two (which are not articulated within the caselaw), have pushed us to a reading of § 726(a), within the context of the Code as a whole, that provides a resolution of the concerns though § 726(a)(5) be applied as written (and as understood by us). Before advancing our analysis, we form a backdrop by reviewing the other cases that have dealt with the question whether § 726(a)(5) requires interest to accrue upon compensation claims from the petition date. These courts will not apply the statute as written, and have determined it necessary to re-write the Code. We think they are wrong.

## THE CASES

We start with the most extreme example of a court's abandonment of statutory language in favor of judicial rewrite. In the case *In re Motley*,[27] the court was dealing with a claim for interest upon a claim for trustee compensation (brought within a final report), to which the United States Trustee had objected, arguing that interest upon compensation would violate the statutory maximum compensation imposed by § 326(a).

The *Motley* court, quite perturbed by a trustee relying upon statutory language in support of interest from the petition date upon a fee claim, offers an opinion that can be divided into two basic components.

First, the opinion voices the arguments used by the other courts supporting the notion that § 726(a)(5) cannot be applied as written. These arguments can be described, in short, as follows:

1. Because trustee (and other professional) compensation is not due until after case administration, and the trustee (and other professional) cannot be paid until an order awarding compensation is entered, somehow § 726(a)(5) does not apply because interest cannot begin to accrue until after an award of compensation.[28]

2. Interest upon trustee compensation somehow would violate the statutory maximum compensation established by § 326(a).[29]

The two generally utilized assertions underlying the determination that § 726(a)(5) cannot be applied as written, and must be re-written by the courts, seem to have been constructed upon a three-level foundation.

*Level 1. The Assumption.*

Section 726(a) is applicable to all claims paid within a bankruptcy case, so,

---

27. 150 B.R. 16 (Bankr.E.D.Va.1992).

28. *Id.* at 18–19. As we shall see, neither *Motley* nor any other of the courts offering this opinion say just why this is, other than it is because it has been made up.

29. *Id.* at 19–20. Again, as we shall see, neither *Motley* nor any other of the courts offering this opinion say just how this would happen.

§ 726(a)(5), as written, is also applicable to all claims paid in the bankruptcy case (including compensation claims, etc.).

*Level 2. The Problem.*

Interest cannot accrue on trustee (or other professional) compensation from the petition date because this would mean that interest might accrue before there was even a relationship with the professional.

Like we have said, we think the problem is even worse from the courts dealing with § 726(a)(5) and compensation claims think it is.

*Level 3. The Policy.*

It would be bad economic and social policy to allow the accrual of interest from the petition date upon trustee (or other professional) compensation claims because the base instincts and inherent greed infecting trustees would cause cases to remain open longer than necessary so that interest could accrue.

We will attempt to deal with this policy component of the foundation, though our analysis renders such a policy irrelevant.[30]

Actually, now that we think of it, this foundation itself sits upon a sub-foundation. The courts dealing with § 726(a)(5) operate upon a very basic notion, put simply, that it need take no effort at statutory interpretation to apply a statute as written, before a court can (or should?) jettison the terms and language of a statute in favor of judicial rewrite. If a court can confect a better (usually easier and, depending upon social, economic, political, and/or normal bent, easier to swallow) way, it should. We think the foundation upon sub-foundation washes out (on all levels) upon the first sign of rain.

Second, and this prong is unique to *Motley,* the court offers a reading of § 726(a),

including (a)(5), that statutorily **precludes** payment of interest upon trustee compensation.

According to the court,

> A close reading of the statutes at issue reveals that § 726(a)(5) refers to the payment of interest on any claim paid under § 726(a)(1). 11 U.S.C. § 726(a)(5) (emphasis added). Section 726(a)(1) also refers to "payment of claims of the kind specified in § 507." 11 U.S.C. § 726(a)(1) (emphasis added). However, § 507(a) divides priorities into claims and expenses. Section 507(a)(1) deals specifically with administrative expenses, the subject of this appeal, and says nothing about the claims referred to in § 726(a)(1) and (a)(5). Clearly, § 726(a) would allow distribution of property of the estate to pay claims, and if paid at 100%, interest on those claims. But under close scrutiny, since § 726(a)(1) makes no mention of distribution of property of the estate to pay the expenses specified in § 507, and § 507(a)(1) refers only to administrative expenses, ...

What the court is saying here is that the reference in § 726(a)(5) to "claims paid under paragraph (1)" (i.e., § 726(a)(1)) only refers to claims entitled to priority under § 507(a)(2) et seq., as § 507(a)(1) refers only to "expenses," not "claims." Therefore, § 726(a)(5) does not even, on its face, provide for interest upon #[31] for administrative expenses, because administrative expense #[32] are excluded from claims entitled to interest.

We address this bit of "statutory interpretation" first, though it represents the court's *coup de grace* by which the trustee is finally handed his head, because it is unique to *Motley.*

---

**30.** Though we are to be rather long-winded in addressing this policy level, our essential retort is that we determined long ago that there are (we think numerous) trustees who take their work seriously and do their jobs in conformity with statutory requirements.

**31.** We use this symbol so that it is not necessary to use the word "claim(s)" in this sentence in a way the *Motley* court would see as improper.

**32.** *Id.,* or "ditto."

This reading of the Code will not withstand scrutiny. Had the *Motley* court looked a bit more carefully (or, even looked at all), it would have seen that in fact the use of "claim" in § 726(a)(1) and § 726(a)(5) is not exclusive of the term "expenses". Section 726(b) refers to "Payment on claims of a kind specified in paragraph (1), (2), (3), (4), (5), (6), (7) or (8) of Section 507(a)" and also to "a claim allowed under Section 503(b) of this title." Section 726(c)(1) refers to "claims allowed under Section 503(b) of this title."

Further, we note that when Congress wanted to separate out administrative expense claims from the other priority claims, **for purposes of the distribution section, § 726**, it knew how to do so and did so. Section 726(c)(2), in furtherance of the explanation of the peculiarities of distribution of community property (§ 541(a)(2) property), provides,

Allowed **claims, other than claims allowed under section 503 of this title**, shall be paid in the order specified in subsection (a) of this section, and, with respect to claims of a kind specified in a particular paragraph of section 507 of this title or subsection (a) of this section....

It seems pretty obvious to us that "claims" does not exclude "expenses." "Expenses" is the type of claim dealt with in § 507(a)(1) and § 503(b). Conservatively it is estimated that we have used the term "claim for administrative expenses" some eighteen million (18,000,000) times. But, if more need be said, it can be. Further examples of references to "claims" under § 507(a)(1) or 503(b), include:

**§ 724(b)(2)**

second, to any holder of a **claim** of a kind specified in **section 507(a)(1)**, 507(a)(2), 507(a)(3), 507(a)(4), 507(a)(5), 507(a)(6), or 507(a)(7) ...

**§ 348(d)**

A claim against the estate or the debtor that arises after the order for relief but before conversion in a case that is converted under section 1112, 1208, or 1307 of this title, other than a **claim** specified in **section 503(b)** of this title, ...

**§ 1322(a)(1)**

... all claims entitled to priority under section 507 ...

**§ 1222(a)(2)**

... all claims entitled to priority under section 507 ...

**§ 1123(a)(1)**

... [shall] designate, ..., classes of claims, other than **claims** of a kind **specified in section 507(a)(1), 507(a)(2), or 507(a)(8) ...**

**§ 1129(a)(9)**

...

(A) with respect to a **claim** of a kind **specified in section 507(a)(1)** or 507(a)(2) of this title ...

(B) with respect to a class of claims of a kind specified in section 507(a)(3), 507(a)(4), 507(a)(5), 507(a)(6), or 507(a)(7) of this title ...

(C) with respect to a claim of a kind specified in section 507(a)(8) of this title ...

We conclude from the foregoing that Section 726(a)(1) clearly extends to administrative expense claims under § 507(a)(1), and that the repetitive use of the word "claims" in § 726(a)(5), also extends to administration expense claims under § 507(a)(1) (and therefore § 503(b)) that are paid under § 726(a)(1). Had Congress intended to exclude administration expense claims, we see from the other references to "claims allowed under § 503(b)" that § 726(a)(5) would have read, "in payment of interest at the legal rate from the date of the filing of the petition, on any claim, other than a claim allowed under Section 503(b) (or § 507(a)(1)), paid under paragraph (1), (2), (3) or 4 of this subsection." It doesn't.

We think the *Motley* court really did not believe its own statutory observations, but used this unbelievable reading of the sections as a ground for its oft-repeated sug-

gestion that literal application of the statute (a suggestion attributed to the poor trustee in the drama, a person named Ames, as though he was the only one alive foolish enough to advance it) would constitute the embrace of an "illogical, unjust and capricious scheme." [33]

In fact, as the court realizes, its reading of § 726(a)(5) as limited to claims other than those under § 507(a)(1) would require that § 726(a)(1) also be so limited.

> ... then the Code if followed blindly would *not* authorize distribution of property of the estate for the payment of administrative expenses, much less for the payment of interest on those expenses. This Court will not follow the dictates of that statutory analysis to deny payment of administrative expenses out of the property of the estate, for that would be an illogical, unjust, and capricious result in light of §§ 330 and 503(b), which provide for allowance and awards of compensation and to that extent are claims against the estate. [34]

Say what? The court, most problematically, has chastised the trustee for arguing statutory language, and has threatened the trustee with a reading of the Code that precludes distribution, through § 726(a)(1), to claims entitled to administrative priority under § 503(b). Is this trustee to be thankful that the court decided that its own reading of the statute created (this time) an illogical, unjust, and capricious scheme, so as to provide the basis for the court dispensing with the statute altogether so that the trustee got to be paid (at least) his compensation claim? Maybe, this time; what about the next time?

What befell the *Motley* court is an extreme version of the downside inherent in attempts at judicial legislation simply to better fit the judge's preferences. The judicial legislation, emanating from the fact that it is sometimes hard to figure what statutory language means, employs no limiting principle and is designed to extricate the court from a momentary analytical jam. One jam leads to another. One refusal to read the statute leads to another. There is usually no foresight; likewise there is usually no aversion to unraveling the next jam with more legislation. Not a pretty trail. If it gets too difficult, analytically, the court threatens the parties with even more far-fetched judicial rewriting or undoing of statutes (in the name of statutory analysis) to establish the power of the court, in the event the judicial preference is challenged. Again, not a pretty trail.

We move from *Motley*'s self-congratulatory *coup de grace* to the other arguments, consistently employed by the other courts addressing the question, offered against application of § 726(a)(5), as written, to professional compensation claims.

Argument 1 above:

(1) Section 726(a)(5) must be appropriately "triggered." With respect to professional compensation, the claim does not arise until an order awarding the claim and therefore, the interest provision of § 726(a)(5) is not triggered until the compensation order.

We have mentioned that we were concerned by the anomalous prospect underlying argument number 1. However, given the clear language of § 726(a)(5), and the illogic of Argument 1 it must fall.

The *Motley* court looks back to the fount of these arguments, *Boldt v. Crake (In re Riverside–Linden Investment Co.)*,[35] for it authority.

The *Riverside–Linden* court dealt with a request for interest upon a claim for attorney's fees by the attorney for the trustee. The interest requested was accrued, not

---

33. *Motley,* 150 B.R. at 18–20.

34. *Id.* This mention of "illogical, unjust, and capricious" is the *Motley* court's fourth in three pages. Rather like a chant.

35. 945 F.2d 320 (9th Cir.1991).

from the petition date, but from the date the estate was first invoiced,[36] because, we suppose, the firm "concedes that a date of filing accrual date for post-petition awards of attorney's fees would not have been intended by Congress."[37]

According to the court, § 726(a)(5), by its words, states that interest accrues from the petition date, and that "for claims existing prior to the filing of the bankruptcy petition, date of filing is appropriate and mandated by the statute."[38] However, says the court, "for a claim to section 330(a) attorney's fees arising subsequent to filing, however, a literal application of the statute makes little sense; interest cannot accrue on fees for services which have not yet been performed."[39]

The court goes on to cite Supreme Court authority for departing from statutory language when "reliance on that language would defeat the plan purpose of the statute," or when construing the statute in conformity with the plain language would establish "statutory schemes that are illogical, unjust or capricious."[40]

Having dispensed with the statute as it reads it, the court is now free to choose between two dates, the date of invoice and the date of the order allowing fees. In reality, the court is free to choose arbitrarily, since it determined that the statute, though applicable, should be thrown out. However, it constructs a facade of analysis which is both utterly inapplicable to the issue at hand, and constructed out of whole cloth to fit the statute that has been thrown out but now needs to be rewritten.

Because fees and expenses are not entitled to administrative expense status until

awarded under § 330, until they are awarded under § 330 they are not entitled to priority as administrative expense claims. Therefore, "it is not until the fees have been awarded ... pursuant to section 330 ... that they become an administrative expense entitling them to treatment as a claim under section 726(a)(5)."[41]

Yes, this is the argument. We promise. Clearly then, according to the court, § 726(a)(5), which does not mean what it says, means that interest on these attorney's fees accrues from the date the fees are awarded. The underlying assumption is that the attorney's fees requested through separate application are covered by § 726(a)(5).[42]

The *Motley* court reiterates the *Riverside–Linden* analysis on the requirement of a fee award trigger-point for the applicability of § 726(a)(5), equating the trustee's compensation requested through the final report with the fee award requested through separate application, because they are both, from the date of the award, entitled to administrative expense status.[43]

*Motley* and *Riverside–Linden* are cited with approval in *In re Chiapetta*,[44] a case dealing with both a trustee compensation request and an attorney's fee application, both submitted as part of the final report "package." The *Chiapetta* court, which we will find approached these matters backwards, was taken with the aforementioned opinions, adopting the analyses as its ground for first throwing out § 726(a)(5) and then rewriting it.

Noting that § 330 claims do not arise until after the filing of a petition, when a

---

**36.** 945 F.2d at 322.

**37.** *Id.* at 324.

**38.** *Id.* at 323.

**39.** *Id.*

**40.** *Id.* at 324. Internal citations omitted. The court offered no limitations of authority for the "makes little sense" ground of departure from the statutory language.

**41.** *Id.* at 324.

**42.** This is an assumption we do not share. *See, infra,* p. 55.

**43.** *Motley,* 150 B.R. at 18–19.

**44.** 159 B.R. 152, 159 (Bankr.E.D.Pa.1993).

court enters a fee award, the court concluded that, in the context of claims pursuant to § 330(a), literal application of allowance of interest for claims "from the date of filing" makes "little sense." *Id.* at 323. The court further stated that statutes "should never be construed as establishing statutory schemes that are illogical, unjust or capricious." *Id.* at 324. Therefore the court concluded that, in order to provide a logical application of § 726(a)(5) to § 330(a) claims, since "it is not until the fees have been awarded by the bankruptcy court pursuant to § 330 ... [that they are entitled] to treatment as a claim under § 726(a)(5)" "interest on such fees does not begin to accrue until the date the court makes the award." ...[45]

Again, the required trigger-point before § 726(a)(5) is applicable.

This determination of statutory meaning is followed in *In re Brown,*[46] though because the judge is Judge Paskay, there are no slavishly adhering quotations. The *Brown* court, however, which is dealing with trustee compensation dealt with through the final report and the trustee's attorney's separate compensation application, arrives at the same problematic destination, upon a slightly varying ground for departing from statutory text.

Thus, in a case of surplus, all previous priorities are entitled to earn interest from the date of the filing of the petition. For claims which arose prior to the date of filing the petition, the date of filing is appropriate for the computation of interest.

A literal interpretation of § 726(a)(5) produces uncontemplated results as to interest allowable to attorneys and trustees, whose administrative expenses arise subsequent to filing. For instance, if the attorney for the trustee is not employed until two years into the administration of the case it would, in effect, permit the attorney to earn interest on those fees when he did not perform any work. Equally, the trustee would be encouraged to delay the administration of the estate to allow the accrual of interest in a surplus case.

. . .

. . . the fact remains that an order has yet to be entered to allow the Trustee any compensation. Thus, he has no claim as defined by § 101(5)(A) of the Bankruptcy Code. Common sense dictates that one can not earn interest when no principal exists. Upon the Trustee's appointment, he had no cognizable right to payment, other than his entitlement to a statutory allowance of $60. It is conceivable that the Trustee could receive no allowance of fees, as his compensation is to be based solely on the amount he distributes to parties in interest. For this reason, the Trustee is not entitled to interest on his fees computed from the date of his appointment.[47]

*Riverside–Linden* is cited as authority for the proposition that interest under § 726(a)(5) does not begin to accrue upon the attorney's fee award until after the order upon the application.[48]

The Eleventh Circuit, in *U.S. Trustee v. Fishback (In re Glados),*[49] dealt with compensation requests from both the trustee (through the final report) and the trustee's lawyer (through application), and agrees,

**45.** *In re Chiapetta,* 159 B.R. 152 (Bankr. E.D.Pa.1993).

**46.** 190 B.R. 689, 690–91 (Bankr.M.D.Fla. 1996).

**47.** 190 B.R. at 691. It is within *Brown* (as it was within *Motley* ) that we get a clear whiff of economic policy underlying the decision to toss the statute. The *Brown* court offers the economic, or administrative justification for the rewrite by decrying the encouragement that trustee's would receive for allowing the surplus cases to languish while the trustee rakes in accruing interest.

**48.** *Id.* at 691–92.

**49.** 83 F.3d 1360 (11th Cir.1996). Herewith referred to as *In re Glados* or *Glados.*

in all respects with the preceding authority. Regarding the necessity of a fee award under § 330 as a trigger-point for the accrual of interest upon (all) administrative compensation claims, the court merely mouths the *Riverside–Linden* "observation" that "a literal reading of § 726(a)(5) without reference to the remainder of the Code would be illogical," [50] and adopts the Ninth Circuit conclusion (made from its extensive trove of common sense) that "It is not until the fees have been awarded ... pursuant to section 330, therefore [ (doesn't this word presuppose preceding analysis?) ], that they become an administrative expense entitling them to treatment as a claim under § 726(a)(5)." [51]

These are the primary cases dealing with § 726(a)(5) interest, and they, to the one, are (they think) unable to make sense out of § 726(a)(5) unless it is rewritten to require that with respect to administrative compensation claims, interest does not begin to accrue until there is an award of compensation. The statute, then, as rewritten by the aforementioned courts, should read something like this:

> Fifth, in payment of interest at the legal rate from the date of the filing of the petition, on any claim paid under paragraph (1), except a claim paid under § 507(a)(1) and/or § 503(b),[52]

■ Of course, it doesn't. Our generally put (for now) interpretation of § 726(a)(5), read in conjunction with the other provisions of the Code, and understood in proper context, is that it applies to all claims paid through the final distribution process outlined in § 726. Therefore, it is not applicable to claims paid outside the final distribution process, such as ordinary course of business administrative claims, fee application based compensation claims, etc. We elucidate our argument in more detail later, but think it necessary here to place our criticism of the aforementioned argument of the no-interest courts in frame.[53] Our interpretation of § 726(a)(5) requires no judicial legislation, and provides us a perch from which to analyze the attempts at judicial rewrite that have failed. We here address the fallacies of the "no interest until order allowing compensation" statutory finagling.

The underlying assumption is that § 726(a)(5) applies to all claims that receive payment in a Chapter 7 case. Use of this assumption generates the problem with allowing interest to accrue upon post-petition claims that might be grounded in a relationship with the estate that did not exist until well after the petition date. The no-interest courts purport to offer a statutory ground for their no-interest-until-there-is-a-claim, no-claim-until-there-is-an-order position. In fact, they offer a rewrite that has no statutory basis and, in fact, is contrary to the most basic tenets of the Code—the meaning of the word "claim."

The approach of the above courts is superficially soothing, if for no other reason than the courts who employ it seem so sure of themselves. So self-contained is the stringing together of the truisms— "can't have interest without a claim, can't have a claim without an order saying you have a claim because having a claim can't be without an order establishing that you have a claim"—that it is tempting to allow the mantra to wash over one without thinking.

> In fact, all claims payable under § 507(a)(1), according to the "logic" of the no-interest-from-petition-date courts, would be excluded from the effect of the statute as presently written.

---

**50.** *Id.* at 1364.

**51.** *Id.*

**52.** We have mentioned the problem of noncompensation administrative claims, which need no order upon which to demand payment. The aforementioned cases do not deal with this question, but undoubtedly would not limit their analyses to compensation claims.

**53.** It is always hard for us to plot out our opinion, to figure what goes where.

However, recall the statute, § 726(a)(5). The only pre-condition for the payment of interest from the petition date is that the claim upon which interest is to accrue be one "paid under paragraph (1), (2), (3), or (4) of this subsection." Therefore, as § 726(a)(5) applies to "any" such claim, if § 726(a) incorporates or covers any claim, however paid, that is paid during the bankruptcy case, then that claim shall be paid interest from the petition date. The above courts suggest that they are doing something of a holistic textual analysis. For example, in *Glados,* we see the Eleventh Circuit chiding the lower court:

> The problem with the district court's statutory analysis is that it ends with § 726(a)(5)'s "any claim paid," thereby ignoring the phrase in section 503(b)(2) that reads "compensation and reimbursement awarded under section 330." [54]

How, we ask, does the *Glados* court's mindfulness of § 503(b) help it? Not at all. Section 726(a)(5) simply does not refer to or deal with the date upon which compensation is awarded. Yet, it does not carve from its analysis compensation claims awarded under § 503(b), if such are paid under paragraph (1) of § 726(a).

There simply is no reference, within § 726(a)(5), to the date upon which an order is issued granting a request for fees, compensation, expenses. There is no reference to a trigger point for interest accrual other than the petition date. If the claim is one paid under § 726(a), it is to bear interest from the petition date.

Another thing. The courts purporting to use the "claim date focus" are not even using a true "claim date focus." It is one thing to state, as established, that an administrative claim was not a claim until the court says, by order, that it is a claim. However, stating such (no matter how often) does not make it so. If anything, the courts are picking the order-approving-the-compensation trigger point out of the

air and in so doing are also rewriting (or, perhaps, ignoring) the way the Bankruptcy Code deals with and treats, conceptually, the word "claim."

For the definition of "claim," including one for administrative expense, we should look first to the definition of "claim" in § 101. "Claim" is defined, for our purposes as "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." [55] Clearly, the definition of "claim" relates most directly to allowance under § 502, but we see no reason why a claim for administrative expenses cannot be seen in the same light. The focus of the "not until order granting the award" courts is upon the language of § 503(b)(2), "compensation and reimbursement awarded under section 330(a) of this title" and upon § 330(a), which refers to the requirement of an award by the court. The "not until award" courts, within the context of the definition of "claim," are focusing upon the three words "right to payment" and are concluding that because a compensation claimant's "right to payment" is contingent upon a court award (can't pay without one) there is no claim until such an award is rendered through court order. However, "right to payment" is a defined term, as well, if only through illustration. A "right to payment" exists whether or not the "right to payment" be "reduced to judgment, liquidated, liquidated, unliquidated, fixed, contingent, matured, unmatured disputed, undisputed, legal, equitable, secured, or unsecured."

Technically, then, if we can borrow the bankruptcy view of "claim" (the issue before us is, rather integrally, a bankruptcy question), there is a claim for administrative expense prior to the order awarding compensation; the claim is simply not made the subject of an award. To the

---

54. *Glados,* 83 F.3d at 1363.

55. 11 U.S.C. § 101(5)(A).

extent the administrative claim is awarded, it becomes a right to payment that is fixed, reduced to judgment, etc. Prior to that, it is unliquidated or contingent, because of the inability of the claimant to obtain payment without the triggering mechanism of the order referred to in § 330(a). It cannot be seriously argued (and the foregoing courts, in merely repeating their conclusions, engage in no argument, serious or otherwise) that the administrative claim originates in the order approving it. NO. It originates in the services performed, is ratified (made non-contingent, liquidated) by the order which retroactively approves, for example, the value of the services previously rendered.

The *Riverside–Linden, Glados, Brown,* and *Chiapetta* courts take pains to state that their opinions adhere to the plain meaning of the statute, by granting interest to those claims paid under § 726(a)(1) (even post-petition claims), requiring only that the interest statute (§ 726(a)(5)), which says nothing about any such thing, be appropriately triggered (*Motley* has got itself in a box with its reading out of § 726(a)(1) as applicable to administrative expense claims, so it kind of has to say no interest at all—be glad I am "giving" you your principal). However, in fact the courts write § 726(a)(5) out, at least with respect to interest on most trustee compensation. As the *Chiapetta* court slyly puts it, "[t]his court has not, until the within order, approved fees to either the trustee or Gross. Consequently, the 'award of a claim' [56] necessary to trigger the application of § 726(a)(5) to these claims will not accrue until the Distribution Order itself is calculated. Therefore, as both the debtor and the UST contend, the trustee and Gross are not entitled to interest on their fee awards." [57]

The circle is complete. Fix the date upon which interest begins to accrue by use of a judicially drafted trigger moment, which is determined by a judicially constructed definition of "claim," all the while purporting to agree that the plain language of the statute allows interest on § 503(b) claims, and BINGO—no interest because the court waits to approve § 503(b) claims until the end of the case—interest begins to accrue after it is too late for interest to accrue. Perfect. In fact, to improve upon perfection, a court would require that all trustee compensation and professional compensation wait until the final report for presentation, so as to insure the last possible moment of which interest accrual can begin. We think the *Chiapetta* court is shrewdly suggesting just such a tactical maneuver (should courts be involved in such things?). We also think that such a maneuver reflects a misunderstanding of § 726(a)(5) and results in the court (hoping to cut the trustee off at the knees—accrue on this!) setting up a construct whereby, according to our interpretation of § 726(a)(5), the court in fact requires that these **claims** be paid interest from the petition date. If the *Chiapetta*-type courts would not be so quick to rewrite (and substitute their better versions of) statutes and to come up with new processes by which to implement their legislation, they might be able to see that the fewer compensation claims paid through the final report process, the less interest will be due.

Argument 2 above:

(2) Interest upon trustee compensation somehow would violate the statutory maximum compensation established by § 326(a).

The final substantive basis upon which courts have focused upon the effect of § 726(a)(5), is in the arena of trustee compensation. It is said, in effect, that § 726(a)(5), despite its inclusive language,—"any claim paid under § (1), (2),

---

**56.** We notice how a phrase, which is to be found nowhere in the statute, takes on almost statutory dimensions if placed in quotes and repeated enough.

**57.** *Chiapetta,* 159 B.R. at 159–160.

(3), or (4) of this subsection"—does not apply to trustee compensation because accrual of interest upon trustee compensation would violate, exceed, conflict with, the statutory maximum compensation allowed under § 326(a).[58]

■ We see our interpretative task as including the charge that we read statutes, if possible, in such a way as to avoid conflict (and thereby the necessity of judicial re-write).[59] We think the "statutory maximum conflict so we have to rewrite § 726(a)(5)" courts have been too quick to find conflict between § 726(a)(5) and § 326. There is none. There is plenty misunderstanding; there is no conflict.

We look to *Motley* for the most expansive articulation of both the supposed conflict and the misunderstanding of the way § 326(a) works.

The court in *In re Motley, supra*, cannot offer a cogent statutory reading that supports the suggestion that § 726(a)(5) interest would cause the compensation to exceed the § 326 maximum, so the court, in essence, chants mantra, issues veiled threats, and winds up waving the equity flag as it holds the barricades against the greedy hordes of trustees it imagines just over the next rise, plotting, on the basis of statutory language, to undermine civilization as the court knows it.

Ames' request for fees must fall within the limits of § 326(a) which dictates the trustee's compensation. The limits that § 326(a) places on trustee commission distinguishes Ames' case from other cases in which courts have considered interest on claims. Case law interpreting § 326(a) strictly construes the restrictions on maximum compensation. It should not go unnoticed that the statutes allude to a maximum compensation level for services rendered by the trustee. Nothing precludes the U.S. Trustee or a creditor from objecting to the requested maximum compensation or the Court in its independent responsibility from reducing that amount. The unambiguous language of § 326(a) places a

---

**58.** *See* n. 2 for the text of the statute.

**59.** *Chaney v. U.S.*, 45 Fed.Cl. 309, 316 (1999), "Furthermore, in construing a statute, courts should attempt not to interpret a provision such that it renders other provisions of the same statute inconsistent, meaningless or superfluous...." (internal citations omitted); *United States v. Fiorillo*, 186 F.3d 1136, 1153 (9th Cir.1999), "One provision of a statute should not be interpreted in a manner that renders other sections of the same statute 'inconsistent, meaningless or superfluous.'" (internal citations omitted); *Great Northern Nekoosa Corporation and Subsidiaries v. United States*, 38 Fed.Cl. 645, 656–57 (1997), "'[t]he cardinal principle of statutory construction is to save and not to destroy,'" *id.*.... "In construing a statute, courts should attempt not to interpret a provision such that it renders other provisions of the same statute inconsistent, meaningless, or superfluous...." (internal citations omitted); *Hughes Air Corp. v. Public Utilities Commission of State of Cal.*, 644 F.2d 1334 (9th Cir.1981), "Another basic rule of statutory construction is that one provision should not be interpreted in a way which is internally contradictory or that renders other provisions of the same statute inconsistent or meaningless...." (internal citations omitted); *People of State of Ill. v. Consolidated Rail Corp.*, 589 F.2d 1327 (7th Cir.1978), "... It is a well-established principle of statutory construction that, whenever possible, statutes are to be construed so that no clause, sentence or word is rendered void or contradictory.... Given the possibility of conflict between the provisions of [a statute], it is our duty to attempt to reconcile the two provisions, absent clearly expressed Congressional intent to the contrary...." (internal citations omitted); *Nevada Power Co. v. Watt*, 711 F.2d 913 (10th Cir.1983), "... statutes must, where possible, be interpreted so as not to render any clause or provision unnecessary, contradictory, or insignificant...." (internal citations omitted); *Atwell v. Merit Systems Protection Bd.*, 670 F.2d 272 (D.C.Cir.1981), "In reaching this result, we are guided as well by the cardinal canon of statutory construction that dictates that provisions should, whenever possible, be construed to achieve consistency...." (internal citations omitted); *U.S. v. Stauffer Chemical Co.*, 684 F.2d 1174 (6th Cir.1982), *cert. granted* 460 U.S. 1080, 103 S.Ct. 1766, 76 L.Ed.2d 341, *aff'd* 464 U.S. 165, 104 S.Ct. 575, 78 L.Ed.2d 388, "Different portions of the same statute should be read and interpreted consistently with each other, avoiding conflicts...." (internal citations omitted).

maximum limitation on compensation for trustees and does not allow for any exceptions. *In re Orient River Investments, Ltd.*, 133 B.R. 729, 731 (Bankr. E.D.Pa.1991). In the *Orient River* case, the court examined substantial case law on the issue and concluded that the vast majority of courts construe the § 326(a) formula as the absolute maximum compensation allowable to a trustee. *Orient River*, 133 B.R. at 730. The court followed the majority view and awarded the trustee no more than maximum compensation that the formula allowed.

It appears to this Court that the formula fixing the § 326(a) compensation for trustee actually provides for the trustee to benefit from interest earned without a court award of fees. Section 326(a) calculates a trustee's fee based on the distribution to creditors. Assets remaining in the estate after payment of all claims allow for the payment of interest in those claims under § 726(a)(5). If the trustee pays § 726(a)(5) interest on claims, as Ames will do in this case, the trustee earns a fee on the interest paid on creditors' claims by virtue of the fee formula of § 326(a). Then allowing Ames' claim for interest on the fees provided by § 326(a) would amount to two bites of the apple and would result in a disincentive for trustees to distribute assets in a timely manner. Under Ames' reading of the Code and cases, a trustee could delay final distribution, as was done in this six-year-old case, allow the interest earned on assets converted to cash to accumulate in escrow, earn a fee on the distribution of those assets (which now include earned interest) in satisfaction of claims, and as part of his compensation petition for interest on his fee under § 726(a)(5). In contrast to Ames illogical, unjust, and capricious scheme, the Code fairly provides for the trustee to benefit from a commission earned from the payment of interest on claims of creditors.[60]

For all the talk about the statutory maximum compensation problem, the court never articulates just what, statutorily, the problem is, preferring to hypnotize with the repetitious reference to "maximum limitation," "strictly construes," etc. and then move in with the catchy "two bites at the apple," "disincentive to trustees" equity jargon. Again, while the phrasing is catchy, there is no articulation of statutory conflict. More than mantra, please.

Section 326(a) imposes a statutory maximum upon compensation that can be allowed, pursuant to § 330(a), for a trustee in a bankruptcy case. Section 503(b) provides administrative expense priority to compensation allowed under § 330(a). Section 507(a) places such compensation into the first level of priorities of unsecured claims. Section 726(a)(1) places trustee compensation within the first final distribution priority. Clearly, trustee maximum compensation under § 326(a) can be calculated upon disbursements of interest, paid pursuant to § 726(a)(5), upon claims, as such distributions would be a component of the aggregate "moneys disbursed to parties in interest other than the debtor." This maximum compensation amount, recall, is not, as *Motley* has referred to it, a "commission." Trustees do not earn money on distributions. Distributions of interest do not give trustees bites at an apple. *Motley*, in its rant, forgets a basic Code construct. Trustees earn compensation by doing work. The statutory maximum compensation is a number. Trustees to not work on commission. Trustees do not earn money under § 326(a). Section 326(a) fixes a number. Compensation awarded under § 330 can be limited by § 326(a). It probably should not (ever) be increased by it. Compensation is subject to the other requirements of § 330, but is capped by § 326, no matter what the general provisions of § 330, if applied without the compensation cap, would allow to a trustee.

60. *In re Motley,* 150 B.R. at 19–20.

Section 726(a) does not provide that interest is a component of the allowed claim.[61] If so, the statute would not have required, through § 726(b), that interest be paid on a pro rata basis on all claims paid through § 726(a)(1)-(4), after all such claims have been paid through § 726(a). The interest provided under § 726(a)(5) is no respecter of priorities; it is a last layer of statutorily-imposed lagniappe that has its roots in the equitable process that is bankruptcy. As we have mentioned in our discussion of the term "legal rate," it is clear that after giving extensive thought and structure to establishing the distributive priority scheme, Congress collapsed the priorities into something like a single lump, to earn interest as delineated in § 726(a)(5), if there is any money left.[62] The highest (priority) rests with lowest, side by side. What this means, at least to us, is that Congress considered the interest to be paid pursuant to § 726(a)(5) to be over and above the claim. Money, if available, is to be distributed because there are claims, before the remainder, if any, goes to the debtor.

■ The statutory cap imposed by § 326(a) is upon compensation that is to be awarded under § 330(a). The interest provided for by § 726(a)(5) assumes the existence of a claim paid under § 726(a)(1), (2), (3) and (4), and is expressly distinct from the claim/award/allowed compensation. There is no requirement of "allowance" of interest under § 726(a)(5).

The court in *Brown, supra,* makes the same sort of adverse pronouncement concerning the statutory maximum compensation "problem" brought about by allowing interest on trustee compensation, but again, never really gets to what, in fact, the problem is.

. . . Section 326(a) of the Bankruptcy Code sets limitations on the amount of compensation to the trustee based on the total distribution made to the creditors. This provision as amended in 1994 now provides:

. . .

Nothing in this section provides for the accrual of interest. The percentages are the maximum which prohibit any award in excess of the cap set by this section.[63]

Of course, the court is correct that § 326(a) does not provide for interest. In fact, it is correct that "nothing" in § 326(a) does so. We understand these words but not the reason for their having been written. Section 326(a) does not provide for interest because it is the section that creates the statutory maximum compensation that can be **claimed** (get it, "**claimed**"). Once the claim for trustee compensation is awarded pursuant to § 330, as limited by § 326(a), it is a claim to be paid under § 726(a)(1). Once it is a claim paid under § 726(a)(1), interest is to accrue, under § 726(a)(5), if there is enough money.

---

**61.** *See, In re Rocky Mountain Refractories,* 205 B.R. 307 (Bankr.D.Utah 1996), in which the court, correctly we think, resolved the problem of the relationship between interest that might form a part of a claim under § 503(b) and interest afforded upon the claim, by § 726(a)(5).

**62.** The metaphor "lump" is used because of the language of § 726(b), which requires that interest, if it is insufficient to pay interest as described in § 726(a)(5)—from the petition date until a distribution date on all claims—is to be paid pro rata. Section 726(b) reads as follows:

(b) Payment on claims of a kind specified in paragraph (1), (2), (3), (4), (5), (6), (7), or

(8) of section 507(a) of this title, or in paragraph (2), (3), (4), or (5) of subsection (a) of this section, shall be made pro rata among claims of the kind specified in each such particular paragraph, except that in a case that has been converted to this chapter under section 1009, 1112, 1208, or 1307 of this title, a claim allowed under section 503(b) of this title incurred under this chapter after such conversion has priority over a claim allowed under section 503(b) of this title incurred under any other chapter of this title or under this chapter before such conversion and over any expenses of a custodian superseded under section 543 of this title.

**63.** *In re Brown,* 190 B.R. at 690.

Section 326(a) says nothing about interest because it should not. There is another section that speaks to interest, that is § 726(a)(5). What is interesting to us is that the "compensation cap imposed by § 326(a) conflict" courts unwittingly offer an (unnecessary) argument in favor of interest. Rather than starting with § 326(a), let us first recognize that § 726(a)(5) provides for interest from the petition date. Should not § 326(a), if it was going to deal with interest, make clear that interest was to be precluded by the compensation cap? We don't know how such a provision would read (and we would never have thought of the absence of preclusion of interest as a basis for our opinion that interest accrues), but because there is no obvious conflict between maximum compensation and statutory interest, we think the court's pointing out the absence of mention of interest, at best, have it backwards.

Remarkably, the foregoing extended quote from *Motley*, and the allusion to a "problem" in *Brown*, are used by the Eleventh Circuit in *Glados* as authoritative analysis.

> Chief Judge Paskay also explained that the award of interest to the trustee is contrary to the purpose of § 326(a), which sets limits on the amount of trustee compensation based on the total distribution made to creditors. *Id.* at 690. The bankruptcy court noted that there is no mention of the accrual of interest in § 326(a). *Id.* In *Motley*, the bankruptcy court determined that interest was inappropriate pursuant to the reasoning of *Riverside–Linden* and concluded that the inconsistency between § 326(a) and § 726(a)(5) constitutes an additional ground for denying interest to the trustee:
>
> > It appears to this Court that the formula fixing the § 326(a) compensation for [the] trustee actually provides for the trustee to benefit from interest earned without a court award of fees.

Section 326(a) calculates a trustee's fee based on the distribution to creditors. Assets remaining in the estate after payment of all claims allow for the payment of interest in those claims under § 726(a)(5). If the trustee pays § 726(a)(5) interest on claims, ... the trustee earns a fee on the interest paid on creditors' claims by virtue of the fee formula of § 326(a). Then allowing [trustee] Ames' claim for interest on the fees provided by § 326(a) would amount to two bites of the apple and would result in a disincentive for trustees to distribute assets in a timely manner. Under [trustee] Ames['] reading of the Code and cases, a trustee could delay final distribution, as was done in this six-year-old case, allow the interest earned on assets converted to cash to accumulate in escrow, earn a fee on the distribution of those assets (which now include earned interest) in satisfaction of claims, and as a part of his compensation petition for interest on his fee under § 726(a)(5). In contrast to Ames' illogical, unjust, and capricious scheme, the Code fairly provides for the trustee to benefit from a commission earned from the payment of interest on claims of creditors.[64]

By this quotation, the *Glados* court is adopting the misguided notions that "section 326(a) **calculates** a trustee's fee," that "the trustee **earns a fee on the interest paid** on creditor's claims by virtue of the **fee formula** of § 326(a)." What was espoused by *Motley* was perhaps ground for fixing trustee compensation at less than the statutory maximum amount (hard to do if it is a commission earned by the trustee, isn't it?), but is no ground for throwing out a clear statute.

The true underpinning of these "maximum compensation conflict with interest" cases, other than a misunderstanding of § 326(a) and how it functions, is the dis-

64. *In re Glados, Inc.*, 83 F.3d at 1365.

trust of trustees that the discussions always get around to. This provides the real fuel for the effort it takes to manufacture statutory conflict. We (of admittedly untrained intellect) are anxious around economic analysis espoused by judges, rarely finding it other than backwards.[65] Yet again we think we have ground for our anxiety.

Basically the "no interest" courts believe themselves to be doing protective work, sacrificing the statutory language for a good cause—keeping trustees from holding cases open without distributing money, for the purpose of getting rolling fat off the accrual of interest. This presumes certain facts, not mentioned by any of the "no interest" courts. First, it must be presumed that trustees are independently wealthy and do trustee work for the investment potential. This is a necessary pre-condition for the suspicion that trustees are sufficiently disinterested in obtaining a paycheck that they would let their compensation sit while it accrues interest. Our experience (though we must say that we did not take evidence on this point) is that trustees go to the grocery store like other people do, pay utility bills, car notes, office help, have insurance premiums due, and might, occasionally, like to go out to eat. Second, it must be presumed that bankruptcy courts and the Office of the U.S. Trustee, both created by Congress either are worthless or blind (or both). Third, and this is important, it must be presumed that the independent wealth of

the trustee was inherited. Otherwise we would have to assume that the trustee's independent wealth was accumulated by the application of business acumen which convinces them to work as trustees, using the trustee job as the means by which the wealth gets built (by letting compensation sit while it accrues interest). This level of business and investment acumen, of course, couldn't keep a trustee alive, much less make a trustee wealthy. Yes, the concern that the trustee is satisfied with having the compensation money at work at the federal rate of interest provided in 28 U.S.C. § 1961,[66] while foregoing compensation requires as an underpinning that trustees be independently wealthy from inheritance (or, perhaps, manna from heaven or something). The problematic investment program is simply not self-sustaining. So, the economic scheme, as portrayed by the "no interest" courts, is that trustees live off the $60.00 per case provided by 11 U.S.C. § 330(b) and treat the few asset cases that are administered as investment vehicles.[67] By the way, if trustees are independently wealthy (from inheritance), why would they need to hold the cases open to accrue more and more and more interest? Isn't the true overriding trustee problem that they are all too wealthy to be interested in the details of a case closing? Isn't it more probable that the wealth that must underlie the trustee determination to be bent on accruing interest from surplus cases (while leaving the principal untouchable in the bank until the

---

65. *In re Lair*, 235 B.R. 1 (Bankr.M.D.La. 1999).

66. In this case the trustee compensation requested is $6325.73, and the case is nearly six years old. In *Glados* the trustee compensation was $4008.42, in a case several years old. In *Brown* the trustee compensation was $828.92. In *Motley* the trustee's compensation request was for $29,441.73 in an eight-year-old case. In none of these cases is it indicated that the compensation claim was paid on an interim basis.

67. The national median percentage of Chapter 7 cases that are closed as asset cases

annually is approximately 2%. We have been unable to form an opinion about the percentage of these cases that are surplus cases. It cannot be much. This probably makes us no more skeptical about the economic incentive analysis used by the "no interest" courts— that is not possible—but it does alert us to the fact that the "no interest" courts are issuing these pronouncements against a backdrop of a 2% asset case rate (which probably translates, at best, into a 2% of 2% surplus rate) and in apparent ignorance of this fact are suggesting that the few and far between situations in which the trustees will earn (probably) the most, they don't want to collect it.

interest bleeds the poor debtor's surplus dry), has caused trustees, as a group, to be uninterested in actualizing even the amazing interest potential of interest on trustee compensation? One final thing on this point. If trustees are independently wealthy, as they must be, why would they be trustees at all, especially in light of the derision shot their way for suggesting that courts apply a statute as written. We think it fine to think about such things as economic incentive and disincentive. However, we yet again find ourselves at odds with the notion that bankruptcy and other federal judges should "develop" their own economic ground of statutory interpretation.

Oh, one final assumption. Debtors and creditors will allow trustees to earn this exorbitant interest without complaining. We think this assumption to be incorrect. In fact, in the few cases nationwide involving money, we think the more plausible set of hydraulics to be (and we were afraid of this) just about opposite of those constructed by the cited courts as flying buttresses for their extra (non) statutory bent. We think debtors will complain and push. We think creditors could even become interested. We think the U.S. Trustee will push on behalf of creditors and debtors. We think trustees will actually look forward to having money in their pockets from larger fees and will not want to explain to a court that must recognize debtor standing (in surplus cases) why final reports are not done, etc. We think, in fact, that the collapse of the orderly set of priorities into a lump, for convenience sake, acts to prompt case closings so that both creditors can be compensated for time, value of money or claims, or work, and the debtor can push to get what is left.

## NOW, OUR TURN; WE INTERPRET THE STATUTE

We mentioned (and then got off the track of following up) that the statute, § 726(a)(5) is hard to understand, in its application, notwithstanding its plainness. We too are bothered by the problems mentioned by *Glados, Brown, Motley, Chiapetta*, et al., particularly the problem involving the professional retained by the trustee (as will be seen, we do not share the concern about trustee compensation). However, we think the statute is plain and have concluded that Supreme Court directive precludes deviation from it by judicial re-writing of the words. Also, if properly understood, we think the interest provision works in a way that can, with court involvement, obviate the concerns of the "we have got to rewrite" courts.

Section 726(a) provides that "property of the estate shall be distributed" to the holders of claims according to a structure of priorities, established by § 726 for purposes of distribution. The distribution scheme incorporates the priorities among certain unsecured creditors that is established by § 507. Monies distributed pursuant to § 726 trickle down, filling each priority before there is an overflow of that strata down to the next. As we have stated, the interest provision of § 726(a)(5) is triggered. The wording is important. Interest is to be paid, at the legal rate, from the petition date "on any **claim paid under paragraph (1), (2), (3), or (4) of this subsection.**" (Emphasis supplied).

 One of the functions of § 726 is the final organization of the priorities among the claims. Our own interpretative difficulties, we think, were grounded in our forgetting this point. We were concerned, not only about the compensation of professionals retained by the estate post-petition, but also those administrative creditors whose § 503(b) claims are paid, say, in the ordinary course of business of an operating trustee throughout the case. These § 503(b) claims are entitled to § 507(a)(1) priority, and, it seemed at first blush, should be treated as claims dealt with under § 726(a)(1) and therefore should receive interest. Experience[68] tells us that

**68.** Approximately 24–26% of the Chapter 7

cases closed in this court, each year, net of

this is never done. Should it be? Could it be? This is both the reverse of the problem mentioned by the cited courts—creditors earning interest after their claims have been paid—and another example of their problem to a further degree—creditors whose claims could have arisen long after the petition date and whose claims were paid according to business terms get interest from before contractual relation and after payment.

The answer to this problem lies not in a rewrite but a wider read of the statute and a focus on the fundamentals of a bankruptcy administration. Section 726 deals with distribution of property, as opposed to "disposition," which is referred to within § 725. Section 725 requires that the trustee "dispose of any property in which another entity has an interest, such as a lien, and that has not been disposed of under another title." Section 725 requires that this disposition take place "before final distribution of property of the estate under § 726 of this title." Section 507(a) makes no mention of disposition or distribution. Section 503(b) provides for the filing of a request for payment of an administrative expense and delineates the types of claims that are entitled to be allowed as administrative expenses. This pre-supposes the ability to obtain an order directing payment of an administrative expense claim before final distribution. Regarding compensation, § 330 states that the court may award compensation to the trustee and professional persons, and further, that "the court shall reduce the amount of compensation awarded under this section by the amount of any compensation awarded under § 331, and, if the award of such interim compensation exceeds the amount of compensation awarded under this section, may order the return of the excess to the estate." Interim compensation to a trustee or professionals employed by the estate may be awarded upon application filed every 120 days (or, more frequently, if allowed by the court),

those converted to Chapter 7, are asset cases

and the "court may allow and disburse to such applicant such compensation or reimbursement." (§ 331). Trustee compensation is limited by the percentages set forth in § 326 determined "upon all moneys disbursed or turned over in the case by the trustee...."

We think a rational reading of § 726(a)(5) is that it is limited to those claims paid under the provisions of § 726(a), that is, within the confines of the final distribution which, functionally, must provide a recapitulation of all disbursements, dispositions and turnovers of monies. Therefore, while the payments made on account of compensation and other administrative expense applications must be accounted for, it is not necessary that they be claims paid within the final distribution. Claims not paid through the final distribution will not be subject to the interest provision of § 726(a)(5).

Practically and statutorily, we think this works. The factual experience of ongoing payment of administrative expense claims in the ordinary course of business and with court approval where necessary to the ongoing administration of the estate is not affected. Administrative claimants, and parties with whom the trustee deals ordinarily will not look for interest to which they should not be entitled because they are being paid right along. The professional who receives interim compensation and whose fee award is brought before the court before the final distribution is not entitled to interest because payment of this type of claim, through the allowance procedure as opposed to within the final settling up, will not be payment under § 726(a).

There need be no re-writing of § 726(a), § 507(a), § 503(b), § 326, § 330 or § 331. The statute as written can be rationally interpreted to fit these provisions into a whole without conflict. This reading of the statute, in fact, comports well with § 704, as this Code section delineating the trust-

involving distributions to creditors.

ee's duties requires that the record of receipts and disbursements of operation of the business of the debtor is different from the "final report" and the "final account of the administration of the estate."

Also reading the statutes together, so that § 726(a)(5) can be applied as written, provides no adverse incentive(s). Trustees have the incentive to get fee matters determined as quickly as possible, to maximize recovery to creditors whose claims will be treated in the final distribution. Ordinary course of business dealings will not be complicated by questions about interest. The trustee who waits until the final distribution before paying § 507(a)(1) claims that could have been paid earlier (which will primarily be professional compensation) must expose their fee claims to arguments by the debtor (perhaps, if there is enough money), other creditors (whose interest payments will be lessened by the dilution caused by adding additional claims to the interest lump), and the court. Of course, our approach may be contrary to the judicial gloss some courts have placed upon the fee process, such as not entertaining interim fee requests, awaiting final disbursement reports before dealing with final fee requests, etc.[69] We think this practice is the reverse of what should be. These courts have, as we have said, required the final submissions of fee applications within the final report process. Of course, they are not burdened by the statute.

Our reading of the statute does not require of us economic incentive analysis for which we are not trained (and which should not in any case be an appropriate substitute for application of a statute), but does allow us to assume that trustees are as interested in collecting (as opposed to in accruing) paychecks as the rest of us and will respond to statutory directives and situational leverage as other parties in interest. Our analysis admits of reliance upon the Office of the U.S. Trustee to do its job and requires us to do ours.

Most importantly, our analysis applies a statute as written, according to the words used by Congress in promulgating the statute, words that are read by the different courts no differently than we are reading them.[70]

## HOW DOES OUR INTERPRETATION SOLVE THE PROBLEM?— TRUSTEE COMPENSATION, EXPENSE REIMBURSEMENT, AND INTEREST

We think our statutory analysis has resolved at least part of the concern underlying the other courts' rewriting of the statute and has satisfied us that our expansion of this concern to all types of administrative claims has been reduced as well. The fee application for professionals' compensation should be handled as the Code provides, outside the final report process, so that payment of the professional compensation awarded under § 330 to professionals other than the trustee will be seen as a "disbursement" under § 326(a), a "payment" under § 503(a) and (b), and not a claim "paid under" § 726(a)(1).[71]

Unlike the opinions discussed herein, we see the trustee compensation request as a different type of fee request, because of the applicable statutory provisions. Unlike the other courts, then, we treat trustee compensation differently, and see the compensation request as properly

---

**69.** See In re Glados, In re Brown, In re Chiapetta.

**70.** We exclude In re Motley, given its proposed reading of § 726(a)(1) and (a)(5) as requiring, on its face, that trustees receive no compensation through the final report process.

**71.** This Court, contrary to the slyness of the Chiapetta court, has rather simple-mindedly always required the fee application of professionals other than the trustee to be dealt with prior to the final report. This mode of dealing with fee applications extends to situations where a trustee has been retained as counsel for the estate.

brought through the final report process.[72] Therefore, though we have offered the *Riverside–Linden* apostles an analytical avenue upon which to conclude that professional compensation requests separately brought under § 330 are not entitled to interest under § 726(a)(5),[73] we disagree with the *Motley, Brown, Chiapetta,* and *Glados* determination that trustee compensation, though covered by § 726(a)(5) cannot earn interest from the petition date.

We are in disagreement, and we are convinced of the correctness of our approach with respect to both trustee compensation and expense claims.

Practically, though an operating trustee might be able to figure interim compensation upon receipts and disbursements, the bulk of trustee compensation claims will arise within the final distribution. Assets will have been collected and reduced to money (§ 704(1)). Claims will have been objected to (§ 704(5)). Exemptions will have been determined. Administrative expenses will have been paid, including other compensation claims. The entirety of moneys disbursed (or to be disbursed) can be calculated and determined for the purpose of applying § 326 to insure that the compensation requested is both reasonable (under § 330) and not excessive (under § 326). In fact, the words of § 326(a) require that the maximum compensation amount can **only** be calculated after performance of the trustee's services, which clearly include, pursuant to § 704 and common sense, the confection of the final report and effectuation of distribution. Because the trustee cannot be paid compensation under § 330 (i.e., final compen-

sation) until after services are rendered, and the trustee's services necessarily include preparation of the final report, etc., the final report, which recapitulates all distributions made and to be made, is the point at which the trustee compensation claim can be held up against the statutory maximum amount. This is another way of saying that until the final report, the statutory maximum amount cannot be determined. Clearly, the most appropriate stage of the case administration process at which to determine compensation is the end of the administration, through the final distribution. Therefore, trustee compensation, as it is in this case, will usually be requested within the final report submitted to the Office of the U.S. Trustee for review and then to the court (and noticed to creditors and parties in interest, including the debtor).

Trustee's compensation requested through the final report is a claim paid under § 726(a)(1). According to the statute, § 726(a)(5), interest is therefore to be paid at the legal rate of interest from the date of the petition. We think this is not only acceptable, but is a rational recognition of the role of the trustee and the trustee's responsibility to the estate. The trustee (on an interim basis, but in fact, interim trustees are almost always made permanent by absence of election) is appointed immediately after the Order of relief. (§ 701(a)(2)). A trustee selected is qualified to serve only if "before five days after such selection, and before beginning official duties, such person has filed with the court a bond in favor of the United States conditioned on the faithful performance of such official duties." (§ 322(a)).[74]

---

**72.** We do not want to give argumentative solace to courts who might decide to reverse their previous parochial predilections and require that trustee compensation requests be made outside the final report process—to avoid interest.

**73.** Our analysis in fact disagrees with *Riverside–Linden*, as we would deny interest upon the professional fee claim submitted through application under § 330 because § 726(a)(5) is not applicable. The professional fee appli-

cation was not seeking inclusion in the final distribution, but was seeking an order directing payment, immediately.

**74.** The bond requirements imposed by the United States Trustee, at least in this District, is one and one-half times the gross amount of funds on deposit in all cases. This allows for the immediate bonding of each case from inception of the appointment.

Once appointed, the trustee is "the representative of the estate," with the "capacity to sue and be sued." (§ 323).[75]

The estate, of which the trustee is representative, is created by the commencement of the case (§ 541(a)). The trustee (from the creation of the estate), "shall manage and operate the property in his possession as such trustee [i.e. the estate, of which the trustee has immediate constructive possession], . . . according to the requirements of the valid laws of the state in which such property is situated, in the same manner that the owner or possessor would be bound to do if in possession thereof." (28 U.S.C. § 959(b)).

We mention these few components of the bankruptcy process[76] to point out that the trustee is trustee from the moment of appointment, that the estate of which the trustee is representative, and the fiduciary duties occasioned by this representation, arise at the commencement of the bankruptcy case—which is the date upon which the petition is filed (§ 301). The compensation claim, as mentioned, is best left until the end of the administration. Notwithstanding the judicial rewrites offered by the courts discussed above, dependent upon their conveniently modified version of "claim," the trustee during the entire case is possessed, by means of her representative capacity, of the estate and is responsible for it (to creditors, governmental agencies, the court and perhaps the debtor). We see no illogic, absurdity, capriciousness (or whatever the surrogate for judicial invitation of itself to judicial rewrite) in providing for interest from the petition date upon a compensation claim that **in fact**, according to the real definition of "claim"—which includes unliquidated claims, unmatured claims, etc.—exists from the petition date because it is

grounded in and limited by the estate (property, claims, etc.) itself. In fact (and this seems easy even for us), moneys disbursed to creditors and parties in interest is nothing more than the bankruptcy estate in changed form—the same bankruptcy estate created by statute as of the petition date, plus property that has become property of the estate after the petition date due to the trustee's involvement from the petition date.

The trustee's compensation earns interest, from the petition date, according to the statute. Not only does this make more than a little sense ("little sense" being, in *Riverside–Linden,* the threshold at which the court must intervene to rewrite, saving Congress from itself), but it makes perfect sense.

The more difficult problem (assuming "difficulty" has something to do with whether or not we apply a statute as written, which it does not), albeit not one that shakes us, is that of reimbursement of trustee expenses. Payment of expenses is more closely aligned with the professional person who is retained post-bankruptcy. The expenses may not be incurred until sometime after the trustee's appointment, and are case-specific. Therefore, it is possible, if not probable, that a trustee may earn interest on an expense claim for a period of time before the actual expenses were incurred.

Though in the non-bankruptcy world this would seem problematic, and would therefore be regulated by contract and perhaps usury laws of the states, the question for this Court is not whether it is problematic, but whether we are to apply a statute as written. Because of the pliancy of the various phrases used by courts as justification for departing from statutory

---

**75.** Of tangential relevance is the statutory requirement that if a trustee is removed by the court, for cause, from one bankruptcy case, "such trustee . . . shall thereby be removed in all other cases under this title in which such trustee . . . is then serving unless the court orders otherwise. . . ." § 324.

**76.** The claims allowance prong and the administration of the res prong of the bankruptcy process have been discussed by this Court in *In re Carter Paper Co.,* 220 B.R. 276 (Bankr. M.D.La.1998).

text, we prefer to look at particular analyses used by the United States Supreme Court in discussing the propriety of departing from clear language.[77]

We move directly to an opinion of the Supreme Court, discussed by us in other opinions, but which is pertinent to this statutory provision as well. In the case *Griffin v. Oceanic Contractors, Inc.*,[78] the Supreme Court dealt with a claim for assessment of a penalty, provided in 46 App. U.S.C. § 596, upon a seaman's unpaid wages that were withheld "without sufficient cause" for the period of time between April 5, 1976, and September 17, 1980. The statute at issue required payment of wages due within 4 days after termination of employment. The statute provided for a penalty, assessed against the owner of a "sum equal to two days' pay for each and every day during which payment is delayed beyond the representative periods." The past due wage amounted to some $412.50, and the daily wage rate at the time of termination was $101.20.

Notwithstanding its conclusion that the wages had been withheld without sufficient cause, the district court limited the penalty assessment to the period of time between termination and the date upon which the claimant began a new job, some 34 days. The district court relied upon a long history of discretion used by trial courts in fixing these penalty assessments. The Fifth Circuit affirmed, concluding that the trial court had not abused its discretion.

The Supreme Court reversed, recognizing that its judgment would require a penalty assessment of in excess of $300,000,[79] as penalty for failure to pay $412.50 in wages, notwithstanding re-employment within 34 days. According to the court, only two conditions were to be satisfied before assessment of the penalty. "First, the master ... must have refused to pay the seaman his wages within the period specified. Second, this failure or refusal must be without sufficient cause." [80]

> Once these conditions are satisfied, however, the unadorned language of the statute dictates that the master or owner "shall pay to the seaman" the sums specified "for each and every day during which payment is delayed." The words chosen by Congress, given their plain meaning, leave little room for the exercise of discretion either in deciding whether to exact payment or in choosing the period of days by which the payment is to be calculated.[81]

Citing a prior opinion, in language pertinent to our exercise, the court notes that it has determined that the statute "affords a definite and reasonable procedure by which the seaman may establish his right to recover double pay where his wages are unreasonably withheld." [82]

Responding to the argument that "the legislative purpose of the statute is best served by construing it to permit some choice in determining the length of the penalty period ..." so as to achieve the "essentially remedial and compensatory" goal and to avoid imposition of an award

**77.** We have in other opinions undertaken a broader analysis of the general status of the law establishing the requirement that a statute be interpreted as written, and the circumstances under which it is appropriate to resort to extra textual interpretative methods. *See, In re Richardson*, 217 B.R. 479 (Bankr. M.D.La.1998); *In re Zohdi*, 234 B.R. 371 (Bankr.M.D.La.1999).

**78.** 458 U.S. 564, 102 S.Ct. 3245, 73 L.Ed.2d 973 (1982).

**79.** We have calculated some $328,900; the dissent used the figure $302,790.40, but assumed the accrual stopped in May, 1980, rather than September, 1980, as is indicated by the majority. The district court judgment awarded $6,881.60.

**80.** *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. at 570, 102 S.Ct. 3245.

**81.** *Id.*

**82.** *Id.*, citing *McCrea v. United States*, 294 U.S. 23, 32 55 S.Ct. 291, 295, 79 L.Ed. 735 (1935).

"that is so far in excess of any equitable remedy as to be punitive,"[83] the court points out that "[T]here is, of course, no more persuasive evidence of the purpose of a statute than the words by which the legislature undertook to give expression to its wishes."[84] According to prior opinions of the court, the plain language of the statute indicated legislative purpose "to secure prompt payment of seaman's wages.... and then protect them from the harsh consequences of arbitrary and unscrupulous action of their employers, to which, as a class they are peculiarly exposed ..." "by the imposition of a liability which is not exclusively compensatory, but designed to prevent, by coercive effect, arbitrary refusals to pay wages...."[85]

The court easily concludes that the purpose of the statute, established within and by its language, is achieved by application of the language of the statute, as written. Of course, the employer had argued, in support of the extra statutory use of judicial discretion allowing courts to fix their our preferred penalty periods, "that a literal construction of the statute would pro-

duce an absurd and unjust result which Congress could not have intended."[86] Given the size of the award in comparison to the amount of unpaid wages ($328,900 versus $412.50), the employer argued that "Congress could not have intended seamen to receive windfalls of this nature without regard to the equities of the case."[87]

Stop. This is exactly the situation we have reviewed in looking over the cited jurisprudence analyzing § 726(a)(5). To refresh—

> For claims existing prior to the filing of the bankruptcy petition, the date of filing accrual date is appropriate and mandated under the plain language of the statute ... for a claim to section 330(a) attorney's fees arising subsequent to the filing, however, a literal application of the statute **makes little sense.**[88]

The Ninth Circuit points out that for a claim to § 330(a) attorney's fees arising subsequent to filing, a literal application of the statute makes little sense; interest cannot accrue on fees for services which have not yet been performed.[89]

**83.** *Id.* at 571, 102 S.Ct. 3245.

**84.** *Id.* citation omitted.

**85.** *Id.* internal citations omitted.

**86.** *Id.* at 574, 55 S.Ct. 291.

**87.** *Id.* at 575, 55 S.Ct. 291.

**88.** *Riverside–Linden,* 945 F.2d at 323 (emphasis supplied). As mentioned, the question of interest on attorney's fees arose within the context of a final fee application as opposed to the trustee's final report (and therefore outside the scope of § 726(a)). However, *Riverside–Linden* doesn't get to our statutory analysis (though it throws around, without qualms, cites about plain meaning giving way to the clear intent (unarticulated by the court) of the statute). The "little sense" standard of departure from statutory text, generating pretty close to a fount of absolute power over what the law ought to be (at least until review; see, for example, the reception given the Ninth Circuit by the Supreme Court in *Union Bank v. Wolas (ZZZZ Best Co., Inc. Trustee),* 502 U.S. 151, 112 S.Ct. 527, 116

L.Ed.2d 514 (1991)) seems to cause flaccid (as opposed to facile) analysis.

**89.** *In re Motley,* 150 B.R. at 18, *citing Riverside–Linden.* The *Motley* case shows the problematic fallout engendered by the hair-trigger test of a statute making "little sense." There is no effort made to make sense of a statute if one can simply disregard it. Frankly, though the reference to the common sense of the non-bankruptcy world makes non-bankruptcy sense, it is irrelevant to a question of Congressional power. If Congress intends for interest to accrue though services had not yet been performed, it certainly has the power to enact such legislation if the legislation is not otherwise constitutionally impermissible. If Congress says it does, it does. The extent of the damage done by the lack of statutory analysis in *Riverside–Linden* is exhibited in *Motley,* which along with its other many faults, makes no distinction between attorney's fee applications under § 330(a) and trustee compensation requests within the final report. *Motley* dealt with a trustee's compensation request within a final report. About the only thing it did correctly was to read *Riverside–Linden* as authority for the incorrect proposition that there should not be a difference.

A literal interpretation of § 726(a)(5) provides **unexpected results** as to interest allowable to attorneys and trustees, whose administrative expenses arise subsequent to filing.[90]

The conflict inherent in a literal reading of § 726(a)(5) is thoroughly explored in the case law around the country ... allowing interest to accrue prior to actual awards is contrary to the remainder of the statutory scheme as well as to the case law interpreting it.[91]

The phraseology, "makes little sense," "unexpected results," etc. is only metaphor for the conclusion by a court that it has a better way of handling things. Against the backdrop of the foregoing, the Supreme Court response is instructive.

It is true that interpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available. See *United States v. American Trucking Ass[']ns., Inc.*, 310 U.S. [534], at 542–43, 60 S.Ct. [1059], at 1063[, 84 L.Ed. 1345 (1940)]; *Haggar Co. v. Helvering*, 308 U.S. 389, 394, 60 S.Ct. 337, 339, 84 L.Ed. 340 (1940). In refusing to nullify statutes, however hard or unexpected the particular effect, this Court has said:

"Laws enacted with good intention, when put to the test, frequently, and to the surprise of the law maker himself, turn out to be mischievous, absurd or otherwise objectionable. But in such case the remedy lies with the law making authority, and not with the courts." *Crooks v. Harrelson*, 282 U.S. 55, 60, 51 S.Ct. 49, 50, 75 L.Ed. 156 (1930).

It is highly probable that respondent is correct in its contention that a recovery in excess of $300,000 in this case greatly exceeds any actual injury suffered by petitioner as a result of respondent's delay in paying his wages....

It is probably true that Congress did not precisely envision the grossness of the difference in this case between the actual wages withheld and the amount of the award required by the statute. But it might equally well be said that Congress did not precisely envision the trebled amount of some damages awards in private antitrust actions, see *Reiter v. Sonotone Corp.*, 442 U.S. 330, 344–45, 99 S.Ct. 2326, 2333–34, 60 L.Ed.2d 931 (1979), or that, because it enacted the Endangered Species Act, "the survival of a relatively small number of three-inch fish ... would require the permanent halting of a virtually completed dam for which Congress ha[d] expended more than $1 million," *TVA v. Hill*, 437 U.S. 153, 172, 98 S.Ct. 2279, 2290, 57 L.Ed.2d 117 (1978). It is enough that Congress intended that the language it enacted would be applied as we have applied it. The remedy for any dissatisfaction with the results in particular cases lies with Congress and not with this Court. Congress may amend the statute; we may not. See *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. [102], at 123–24, 100 S.Ct. [2051], at 2063–64[, 64 L.Ed.2d 766 (1980)]; *Reiter v. Sonotone, supra*[, 442 U.S. 330,] at 344–45, 99 S.Ct. [2326], at 2333–34[, 60 L.Ed.2d 931 (1979)].[92]

In fact, the courts that have reconfigured the meaning of "claim," that have

---

90. *In re Brown,* 190 B.R. at 691 (emphasis supplied).

91. *In re Glados,* 83 F.3d at 1364, 1366. The level of analysis exhibited by the Supreme Court in *Oceanic Contractors* is glaringly superior to the unbased, conclusionary assertion of the Eleventh Circuit. To just what part of the statutory scheme would literal application be contrary? The circular nature of the self-fulfilling exhortations is evident. Courts

don't think about the statutory scheme and throw out a statute as being contrary to the undesired statutory scheme. The caselaw thereby establishes the conflict, and is thereafter relied upon as authority for there being a conflict. This unbroken line of jurisprudence is remarkable for having never articulated the ground of its position.

92. 458 U.S. 564 at 575–76, 102 S.Ct. 3245, 73 L.Ed.2d 973.

created an extra statutory trigger-point, and that have dredged up illusory conflicts, all in the effort to keep from applying § 726(a)(5) as written, have done so just to avoid the very type of unforeseen or objectionable consequences that the Supreme Court says cannot be avoided through refusal to apply statutes as written. For exercise, let us place the aforementioned courts into the shoes of the Supreme Court, reviewing the *Oceangraphic* appeal and the particularized arguments that might be raised by the employer in support of the suggestion that discretion should be used in fashioning the appropriate penalty duration and therefore penalty amount, notwithstanding the statutory language. (We perform this exercise, of course, to address the unthinking refrain concerning the unlawfulness of Congressional act that would allow interest to accrue from the petition date though the services underlying the fee not having been performed. Absent Congressional act, perhaps it is appropriate or correct to say such things as, "interest cannot accrue on fees for services which have not yet been performed." However, it could just as well be said that absent Congressional Act, one having a claim for $412.50 is not entitled to a penalty claim of $328,900 because of the passage of 1625 days, 1591 of which found him working. The Congressional Act that becomes/makes the law changes the world from the pre-Act world to the post-Act world. Once the Act is passed, becomes law, it is part of the world. Resort to a world without the act as a means of determining the validity of the act is not only meaningless, it is ridiculous.)

The employer would urge several different perspectives through which the courts could glean the absurdity of the employee's position.

(1) The employer would point out that the employee was out of work for only 34 days, and has demanded $412.50 in wages. The employee demands $328,900 in penalty upon the plain meaning of the statute, notwithstanding that for all but 34 days he was working a job paying, presumably, a daily rate equivalent to his prior rate.

(2) The employer would point out that application of the statute, as written, would generate a recovery of $328,900 over and above the wage claim. Put another way, says the employer, the employee is requesting a penalty of approximately 796.35 times the lost wages (that is, we think, an increase of 79,635 per cent over and above the wage claim).

(3) The employer would offer another version of the extent to which the penalty amount claimed is an unjustifiable windfall. If the $412.50 wage was invested over the period dealt with (approximately 1625 days) the rate of return, to produce the claimed penalty amount of $328,900 would have to be approximately 324.25% per annum, compounded annually.[93]

(4) The employer would point out that to earn the claimed penalty amount of $328,900, the employee would have to work 365 days per year (at the court-found daily rate of $101.20) for a period of 8.904 years. Assuming a more relaxed 50 weeks per year, 6 days per week, the penalty claim represents 10.833 years worth of wages, for failure to pay $412.50, notwithstanding that the debtor presumably would have continued to work at his regular daily rate

93. We use annual compounding to better relate the contours of the *Oceangraphic* plea for equity to the pull of the equity claim that proved so irresistible to the § 726(a)(5) rewrite courts. Recall that use of the grounds of equitable intervention was the unthinkable proposition of paying federal rate of interest that might not, according to non-bankruptcy law principle, have been earned, and also that courts could not countenance such a windfall.

It is interesting to see the Supreme Court so steadfastly adherent to statutory language in the face of an interest rate equivalent to 324.25%, per annum, compounded annually, but the § 726(a)(5) rewrite courts so quickly blanching and then cutting and running away from the prospect of a trustee earning the federal rate, some pieces of which perhaps not being available under non-bankruptcy law principles.

290

during the 10.833 years. The upshot of this calculation is that the daily double wages for some 1,625 days (or approximately 4.45 years) actually represents closer to 11 years' worth of wages (if we use 50 weeks a year, 5 days a week, the penalty claim amounts to 13 years' wages). All for refusal to pay $412.50 upon demand.

We have analyzed the extent to which the § 726(a)(5) rewrite courts have contorted to avoid applying this particular statute (§ 726(a)(5)) as written. There can be no doubt that the penalty claim dealt with in *Oceangraphic* (representing a 324.25% award return for $328,900 versus the 6.48% (or $1,962.05) requested by the trustee in this case) would have been flung into statutory rewrite-judicial-discretion-land by each and every one of the courts who have opined upon § 726(a)(5). We can see the analysis before our eyes. In essence, it would be exactly the same as used in thrashing § 726(a)(5) (and parties relying upon it): penalty claims amounting to 324.25% interest per year, that result in a claim 79.635% above the principal claim, that equate to more than 10 years' labor, that grant a windfall of $328,900 over the $412.50 claim amount, cannot be paid. That interest rate, windfall amount, etc. cannot happen in the bankruptcy world because it does not admit of mitigation, which is a cornerstone of the adjudication of such claims. It is clear to us that each and every one of the discussed courts would have required that the statute dealt with in *Oceangraphic* not be applied as written. The Supreme Court says they would have been wrong. The Supreme Court, through the principles elucidated in the *Oceangraphic* opinion, says that the § 726(a)(5) rewrite courts were in fact wrong to stray from the statute, in favor of their judicial preferences for how § 726(a)(5) should have been written.

The Supreme Court says that once the statute is passed, the world, now including the statute, is different. The statute dealt with in *Oceangrahic* was clear, it required only two pre-conditions, and, if the pre-conditions were satisfied, provided a formula that is almost ministerial in application. Exactly like § 726(a)(5). If a claim is a claim paid under § 726(a)(1), (2), (3), or (4), interest shall be paid at the legal rate from the petition date. Period.

Another opinion of the Supreme Court is instructive. In *Taylor v. Freeland & Kronz*,[94] the Supreme Court dealt with the question whether Rule 4003(b), which requires that an objection to the claim of exemptions be filed within 30 days after the filing of the exemption claim (or amendment thereto), precluded an objection after expiration of the 30–day period if the debtor did not have a good faith or colorable basis for claiming the exemption.

In the bankruptcy case the debtor had scheduled an employment discrimination lawsuit, with an "unknown" value, as exempt, though applicable exemption law did not provide a statutory basis for the exemption. After the period for objection, the discrimination suit bore fruit, yielding some $110,000, which the trustee determined should go into the estate. The appeals court reversed the lower courts, who had accepted the trustee's argument that the 30–day objection period ·did not run against claimed exemptions filed in bad faith or without statutory basis.[95]

The trustee argued that literal application of § 522(1) ("The debtor shall file a list of property that the debtor claims as exempt under subsection (b) of this sec-

**94.** 503 U.S. 638, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992).

**95.** The Fifth Circuit case, *Matter of Sherk*, 918 F.2d 1170 (5th Cir.1990) was one of the courts that had ruled that the 30–day period did not run against exemptions claimed in bad faith or without statutory basis. In fact, in *Sherk*, the court made numerous citations to the bankruptcy court opinion that generated the *Taylor v. Freeland & Kronz* decision. In *Sherk* the court held that the objection period was subject to the requirement of a statutory basis for the claim of exemption, that failure to object within the 30 days could have no legal effect without such a ground.

tion.... Unless a party in interest objects, the property claimed as exempt on such list is exempt.") was inequitable, that the equitable overlay was necessary to discourage debtors "from claiming meritless exemptions merely in hopes that no one will object." [96] Literal application of the statute

> will create improper incentives. He asserts that it will lead debtors to claim property exempt on the chance that the trustee and creditors, for whatever reason, will fail to object to the claimed exemption on time. he asserts that only a requirement of good faith can prevent what the Eighth Circuit has termed "exemption by declaration." [*In re*] *Peterson, supra* [920 F.2d 1389] at 1393 [(8th Cir.1990)]. This concern, however, does not cause us to alter our interpretation of § 522(1).[97]

In other words, the literal application of § 522(1) could generate the creation of exemptions limited only by the extent of a debtor's (or debtor's lawyer's) imagination and willingness to be less than truthful, and could create the unforeseen consequence of exemptions created out of whole cloth merely by the act of declaring the property exempt. Protection against such problematic or unforeseen consequences was ground for refusing to apply the statute as written for coming up with judicially created exceptions to the statute.

The court declined the trustee's argument, concluding that the plain language of § 522(1) and Rule 4003 required that the property was exempt, and that the equitable concerns did not override the statutory language. The court as well offers an alternative to nasty departure from the statutory language to protect against the problematic consequences that might arise in the event of literal application. The court points out that there are numerous statutes and rules expressly designed (in their language) for dealing with the very

inequities suggested by the trustee as probable if the exemption statute was applied as written.

This alternative to premature flight from the statutory language is instructive, as it suggests, without expressly chastising, that maybe following the statute and rules should be the first alternative considered, and it should be considered against the backdrop of other statutory provisions that might come into play in the event problems might arise from the statute being so applied.

> Debtors and their attorneys face penalties under various provisions for engaging in improper conduct in bankruptcy proceedings. See, e.g., 11 U.S.C. § 727(a)(4)(B) (authorizing denial of discharge for presenting fraudulent claims); Rule 1008 (requiring filings to "be verified or contain an unsworn declaration" of truthfulness under penalty of perjury); Rule 9011 (authorizing sanctions for signing certain documents not "well grounded in fact and ... warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law"); 18 U.S.C. § 152 (imposing criminal penalties for fraud in bankruptcy cases). These provisions may limit bad-faith claims of exemptions by debtors. To the extent that they do not, Congress may enact comparable provisions to address the difficulties that Taylor predicts will follow our decision. We have no authority to limit the application of § 522(1) to exemptions claimed in good faith.[98]

In other words, the parade of horribles conjured up by the trustee that would befall the bankruptcy process in the event the exemption statute was to be applied as written is already offset by other provisions triggered upon abuse or misuse of the statutory grant. The statutory scheme, therefore, was held to work quite

---

**96.** 503 U.S. at 642, 112 S.Ct. 1644.

**97.** *Id.* at 644, 112 S.Ct. 1644.

**98.** *Id.* at 644–45, 112 S.Ct. 1644.

nicely, even if it could generate problematic consequences.

We conclude that the case law that has been so quick to pronounce § 726(a)(5) incapable of being applied literally have failed to abide by Supreme Court directive requiring adherence to Congressional language. The quickness to pronounce a statute as establishing, if read literally, an "illogical, unjust and capricious scheme," [99] manifests an unwillingness to attempt to make sense of a statutory system (as a whole) and a ready willingness to abandon statutory dictates in favor of judicial rewrite. The readiness to resort to conclusory suggestions that application of statutory language as written "would defeat the plain purpose of the statute," [100] perhaps even more problematic than the marked urge to rewrite, purports to operate upon a statutory analysis, though the conclusion is, as well, the argument.

 We offer the foregoing resort to Supreme Court opinion, not necessarily to buttress our determination that the trustee compensation claim paid through the final report process should bear interest from the petition date (we think this is the easy question, upon the arguments previously set out). Rather, we look to the authority to support our conclusion that the expense portion of the trustee's overall claims made within the final report process should, as well, bear interest from the petition date.

We recognize that the effect of interest accruing from the petition date upon a trustee expense reimbursement claim probably does require that interest accrue in a way that applicable non-bankruptcy law probably doesn't provide.

Taking note from the Supreme Court, we divine the legislative intent from the words of the statute. We think it clear that Congress determined it appropriate to provide a federal interest overlay, in the event of a surplus, that could be easily and uniformly calculated upon all claims paid through the final report process, before the surplus be paid to the debtor. The use of the federal rate makes otherwise applicable rates irrelevant. Likewise, the use of a fixed moment in time for the beginning of interest accrual makes resort to otherwise applicable non-bankruptcy accrual triggers irrelevant. The statutory purpose of the statute is to compensate, somewhat, maybe too little, maybe too much, for the fact of bankruptcy, in a manner that will allow this last calculation before actual payment (to everybody, including the debtor) to take place expeditiously and uniformly.

It will always be that a trustee's expense reimbursement request will not reflect an amount of expenses incurred as of the moment immediately following the filing of the bankruptcy petition. This is of no moment to this Court. The expense reimbursement request is properly brought within the final report (clearly it includes preparation, copies, etc., mailing, etc., involved in the confection of the final report). Because of this, it is a claim paid under § 726(a)(1). Because of it being a claim paid under § 726(a)(1), the claim is to be paid interest from the petition date under § 726(a)(5).

The interest earned upon this trustee's expense reimbursement claim, because of the language of § 726(a)(5), amounts to $39.36. Congress has authority to require payment of $328,900 on account of failure to pay wages of $412.50, because of the passage of some 1625 days during all but 34 of which the claimant was working at another (similar) job. A Congressional act which clearly requires the payment of $39.36 interest upon an expense claim of $119.53, because of the passage of some five years, cannot be said to be an absurd, illogical, or capricious statutory scheme. Accrual of this interest amount, easily established by application of a particular interest rate to a fixed claim for a statutorily

---

**99.** *Motley,* 150 B.R. at 20.

**100.** *Riverside–Linden,* 945 F.2d at 324.

determined single time period, cannot be seen to be demonstrably at odds with the intent of the drafters; the intent is clearly gleaned from the statutory language and is secured by application of the statute as written.[101]

## CONCLUSION

We conclude, notwithstanding the "authority" to the contrary, that § 726(a)(5) means what it says. It should not be re-written through cute tricks performed upon other statutory terminology, such as the word "claim." It should not be re-written to include fictitious trigger points. It should not be misread so as to create statutory conflict with § 326.[102] It should not be misread so as to create the situation where trustees, whose compensation is provided for in § 507(a)(1) as a first priority expense claim, are entitled to no compensation under § 726(a), at all, unless the court that has rewritten the statute to exclude compensation expenses/claims altogether will ignore the statute as re-written and allow compensation despite the professed interpretation.[103]

The interest provision, § 726(a)(5), applies to claims paid through the mechanism of § 726, the final distribution by the trustee. The interest provision, § 726(a)(5), does not apply to post-petition claims that are paid pursuant to court order, ordinary course of business terms, etc. before the final distribution. If a claim is to be paid through the final distribution (as opposed to being reported as previously paid in the schedule of receipts and disbursements contained within the final report), then the claim paid is to earn interest from the petition date, at the rate established by 28 U.S.C. § 1961 as of the petition date, regardless of the date upon which the claim arose. We do not like the possible consequences that are imaginable, but are unwilling to measure statutory logic by our likes and dislikes. The statute at issue is well within the realm of Congressional authority, and as we interpret it, fits squarely within a statutory scheme. Also, like the Supreme Court in *Taylor v. Freeland & Kronz* points out, regarding means by which the court is empowered to halt the argumentatively predicted impending flood of fraudulently claimed exemptions, there are means by which the court authority, through statutory provisions, can be invoked to preclude the conceived horribles regarding § 726(a)(5) interest from attaining actuality.[104] Authority over fees,

101. Two things. We reiterate that none of the cases dealt with in this opinion, though they spout the conclusion that application of § 726(a)(5) as written would cause a result demonstrably at odds with the intent of the drafters, say anything about what the intent of the drafters was, what the intent of the statute is, and therefore have nothing to say about how application of the section as written can be in conflict with Congressional intent. Rather, the conflict is with how the courts believe the statute should have been written. Though we have alluded to it, we now mention that the intention of Congress, to provide an easily calculable interest overlay upon all claims prior to distribution to the debtor, would be thwarted if the trustee would have to accrue interest on the expense claim from the date of the incurrence of each expense. There can be no question but that the cost of such a calculation would exceed the $39.36 in interest incurred here.

102. The notion of creating statutory conflict where the statutes are quite easily read together, so as to provide basis for a judicial rewrite of the statute, is judging gone haywire.

103. We are talking about *Motley*, 150 B.R. 16, of course. This opinion is the most egregious, as it represents a threat to the trustee emanating from the court's double-edged freedom from statutory construct. First, the court feels free to rewrite § 726(a) to exclude administrative expenses from the ambit of the term "claims," as used in § 726(a)(5) and therefore in § 726(a)(1). Then it feels free to ignore the statute as re-written (by it) and award payment of administrative expenses under § 726(a)(1) because, well, the court feels like doing the trustee a favor (so long at the trustee will abide by the directive that he never argue statutory language again).

104. We must note that these horribles are quite meek compared to the possibilities inherent in the exemption by declaration reading of § 522(1).

for example, can be used in the face of an attempt to deprive creditors or the debtor of money, without reasonable basis.[105] Authority of the court over the trustee continuing to handle cases is seemingly a substantial treat to trustee maliciousness and sloth.[106] Also, there is the Office of the United States Trustee, charged with vigilant review of trustee estate administration.[107]

The stops are in place that provide the court with authority and means to ensure that estates are administered correctly. Our reading of § 726(a)(5), and our application of it in this case implements the expressed will of Congress as opposed to abrogating it in favor of our own rewrite.

A separate Order approving the Trustee's Final Report and amended distribution schedule, with the interest proposed, will be entered.

---

**105.** By means of objections to the final report, for example. Doubtless a court believing a trustee has breached her duty to the estate by coagulating non-final report claims into the final report can pay by means of denial of fees and expense reimbursement (and thereby, interest), which should, in most cases more than make up for the problematic interest required by the statute, and should act to teach the trustee the lessons that actually need teaching. Of course, if all trustees are inheritance wealthy, it is conceivable they are beyond teaching. Oh, well.

**106.** *See* 11 U.S.C. § 324.

**107.** *See* 28 U.S.C. § 586.